**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

CASE NO.  1:09-CV-00211- mm P/AK

B-K CYPRESS LOG HOMES,
INC., a Florida corporation,

      Plaintiff,

v.

AUTO-OWNERS INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

## COMPLAINT

B-K Cypress Log Homes, Inc., sues Auto-Owners Insurance Company, as follows:

### JURISDICTION AND VENUE

1.    This is a cause of action for damages in excess of $75,000, exclusive of attorney's fees, costs and interest.

2.    Venue is proper in this judicial district as at all material times the acts complained of occurred in Levy County, Florida and Auto-Owners sold insurance and performed other business transactions in Levy County, Florida.

3.    This court had jurisdiction over this matter pursuant to 28 U.S.C §1332 due to the parties' diversity of citizenship.

### THE PARTIES

4.    At all material times, B-K Cypress was a Florida corporation that was insured by Auto-Owners under a comprehensive general liability insurance policy, No. 886412-20393748-01, a copy of which is attached as Exhibit "A."

Summons issued
0/5/2009  KMalu

Filed 10/05/09 USDC Flni AM 1002

VER PLOEG & LUMPKIN, P.A., ATTORNEYS AT LAW, 100 S.E. SECOND STREET, THIRTIETH FLOOR, MIAMI, FLORIDA 33131 TEL. (305) 577-3996 FAX 577-3558

5.     At all material times, Auto-Owners was a foreign corporation authorized to sell insurance in Florida whose employees acted on behalf of Auto-Owners within the course and scope of their employment or agency with Auto-Owners.

6.     At all material times, counsel acting on behalf of Auto-Owners as alleged herein did so (1) with the authority of Auto-Owners, (2) with the knowledge of Auto-Owners, and (3) at the direction and under the control of Auto-Owners.

7.     B-K Cypress has satisfied all conditions precedent to bringing this action, including those in Fla. Stat. §624.155 by serving a Civil Remedy Notice of Insurer Violation (Attached as Exhibit "B").

8.     At no time within 60 days of July 16, 2008 did Auto-Owners pay the damages or correct the circumstances giving rise to the violations described in the Civil Remedy Notice.

## STATUTORY BAD FAITH UNDER FLA. STAT. §§ 624.155(b)(1) AND 626.9541(1)(i)

9.     By the commission of the acts alleged herein, Auto-Owners has violated:

a.     Fla. Stat. §624.155(b)(1) by not attempting in good faith to settle claims against B-K Cypress when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insureds and with due regard for their interests; and/or,

b.     Fla. Stat. §626.9541(1)(i) by making material misrepresentations over a period of years to B-K Cypress, its counsel and other parties having an interest in the proceeds payable under the policy, both within and outside of court proceedings, for the purpose and with the intent of effecting settlement of claims against Auto-Owners on less favorable terms than those provided for in and contemplated by the Policy.

2

VER PLOEG & LUMPKIN, P.A., ATTORNEYS AT LAW, 100 S.E. SECOND STREET, THIRTIETH FLOOR, MIAMI, FLORIDA 33131   TEL. (305) 577-3996 FAX 577-3558

10.     In 2004, Mark and Diane Senti, on behalf of their corporation, Stemsys Corporation, sued B-K Cypress in Case No. 38-2004-CA-0549, in the Eighth Judicial Circuit in and for Levy County, Florida (hereafter the "Senti case").

11.     Auto-Owners' bad faith conduct in the Senti case began before the underlying action was filed and continued throughout that litigation, as well as throughout the subsequent coverage litigation, for a total of nine years.

12.     The Sentis first made a formal claim to B-K Cypress on September 24, 1999, at which time they offered to settle the dispute for $52,450. Although B-K Cypress promptly reported this claim to Auto-Owners, Auto-Owners did nothing to assist B-K Cypress with the claim for the next several months. Instead, B-K Cypress was forced to handle the problem on its own, including retaining experts to study the problem and arranging a meeting between the parties on January 26, 2000.

13.     B-K Cypress requested Auto-Owners' assistance in resolving the claim on numerous occasions, including asking the insurance company to send a claims representative to the January 26, 2000 meeting. However, it received no response from Auto-Owners.

14.     After the January 26, 2000 meeting, B-K Cypress contacted Auto-Owners to see if it would provide coverage for the Sentis' claim. However, it received no response for the next two months.

15.     On March 9, 2000, Auto-Owners finally issued a reservation of rights letter. However, one month later, on April 19, 2000, Auto-Owners reversed course and said that it would not be providing coverage for the claim.

16.     If Auto-Owners had acknowledged coverage for the Sentis' claim at that point, the matter could have been settled for $52,450. However, due to Auto-Owners' denial of

3

coverage, the matter remained unresolved for the next four years, during which time B-K Cypress received numerous threatening letters from the Sentis.

17.     After the Sentis finally filed suit on June 22, 2004, Auto-Owners stated that it would provide B-K Cypress a defense under a reservation of rights. But Auto-Owners failed to tell B-K Cypress what coverage defenses it was relying on, obtain a nonwaiver agreement, or retain independent counsel which was mutually agreeable to B-K Cypress and Auto-Owners, all in violation of Fla. Stat. §627.426(2). Instead, it stated that it wanted to wait for a decision on a motion to dismiss filed by B-K Cypress's personal counsel, David Levy, before it hired a defense firm and that it would be "willing to consider" any fees or costs that Levy incurred as a result of the case. Thus, B-K Cypress was forced to continue using and paying for its personal counsel to defend the case without any guarantee that it would be reimbursed for its fees and costs by Auto-Owners.

18.     Over the next several months, Auto-Owners repeatedly failed to communicate with B-K Cypress regarding the status of the case despite letters from Mr. Levy requesting the insurance company's involvement. In addition, Auto-Owners refused to make timely decisions about the progress of the case, as a result of which it was repeatedly and unnecessarily delayed.

19.     On August 18, 2004, Mr. Levy asked the claims representative for Auto-Owners, Gerry Gwinn, for permission to stipulate to arbitration. However, he did not receive any instructions from Mr. Gwinn until January 26, 2005, more than five months later, at which time Mr. Gwinn finally advised him that he should proceed with the motion to dismiss.

20.     On January 26, 2005, Mr. Levy again asked Mr. Gwinn for instructions on how to proceed and, in response, received nothing more than a brief handwritten note stating "Let's see where they want to go with this. Let me know if you hear anything."

4

21.    In December 2005, Auto-Owners destroyed any prospect for a quick settlement by failing to appear at a mediation that was scheduled for December 19, 2005. Specifically, Mr. Gwinn received at least seven letters from Mr. Levy regarding the mediation, including two in which he was advised that the mediation had been scheduled for December 19, 2005. Despite this repeated notice, Mr. Gwinn failed to appear at the mediation without giving any notice or excuse. As a result, the Sentis were extremely upset and demanded that they be reimbursed for the attorney's fees and costs they incurred as a result of the cancelled mediation.

22.    Mr. Gwinn then compounded the problem by refusing to respond to the Sentis' requests for reimbursement. As a result, the parties' efforts to quickly settle the case through mediation were completely derailed, and the Sentis immediately demanded arbitration, which resulted in a drastic increase in attorney's fees and costs.

23.    In the meantime, Auto-Owners refused to pay any of the attorney's fees and costs incurred by B-K Cypress as a result of Mr. Levy's representation, forcing B-K Cypress to pay those fees and costs directly.

24.    After the case went to arbitration and B-K Cypress retained new counsel, Auto-Owners continued to make no response to letters demanding that it pay the fees and costs incurred by B-K Cypress.

25.    On July 10, 2006, Mr. Gwinn was informed of the upcoming arbitration deadlines. He and Auto-Owners refused to respond.

26.    On July 27, 2006, demand was made of Auto-Owners that it pay an invoice in the amount of $2,800 for B-K Cypress's pro rata share of the arbitration deposit. Auto-Owners refused to respond.

5

27.     On July 27, 2006, demand was made of Auto-Owners for payment of billing invoices for April and May 2006 for fees and costs incurred by B-K Cypress. Auto-Owners refused to respond.

28.     On August 23, 2006, demand was made of Auto-Owners for payment of billing invoices for April, May, and June 2006 for fees and costs incurred by B-K Cypress. Auto-Owners refused to respond.

29.     The above course of conduct of intentionally refusing to respond was part of an intentional plan by Auto-Owners to pressure B-K Cypress into settling the Sentis' claims by refusing to (1) ever formally deny coverage, (2) formally withdraw its defense or (3) pay for the cost of the defense.

30.     Because it had the right to protect itself, and because of the conduct of Auto-Owners, B-K Cypress settled the underlying lawsuit with the Sentis. (See Attached Composite Exhibit "C", Coblentz Agreement, Settlement Agreement, Consent Final Judgment, Covenant Not to Record or Execute, and Assignment of Rights and Benefits Under Auto-Owners Insurance Policy Agreement).

31.     The Sentis in 2007 then sued Auto-Owners to establish the coverage under the policy (the "coverage litigation").

32.     On June 13, 2008, B-K Cypress moved to intervene as a plaintiff in the coverage litigation and was permitted to do so.

33.     Auto-Owners continued its bad faith conduct not only toward B-K Cypress but also toward the Sentis by engaging in a course of conduct that extended throughout the coverage litigation. It did so either through its counsel or directly, by intentionally and willfully violating, among other rules and requirements for parties or their counsel: Fla. Stat. §624.155(b)(1); Fla.

6

Stat. §626.9541(1)(i); Fla. R. Civ. P. 1.280, 1.340, 1.350, 1.370 and 1.380; Fla. R. Jud. Admin. §2.515(a); various Rules of Professional Conduct applicable to counsel; and Fla. Stat. §626.878 and the Adjusters' Code of Ethics found in Fla. Admin. Code. §69B-200.201(3).

34.    In its answer and affirmative defenses to the Sentis' complaint, served on February 22, 2007, Auto-Owners not only improperly denied coverage and that it had a duty to defend B-K Cypress, when it knew or should have known that its position was unfounded, but also asserted frivolous affirmative defenses and a frivolous counterclaim in which it falsely alleged that (1) it had provided a defense to B-K Cypress and (2) that B-K Cypress had breached the terms and conditions of the policy by failing to cooperate with the investigation, settlement, and defense of the Sentis' claim.

35.    Auto-Owners repeated this violation a second time by serving a similar answer and affirmative defenses to B-K Cypress's complaint in intervention, on July 29, 2008, when it not only denied coverage and a duty to defend but also asserted numerous frivolous affirmative defenses, including breach of contract and failure to satisfy the conditions precedent to coverage.

36.    Auto-Owners repeated this violation a third time when it falsely denied, in its September 2, 2008 response to B-K Cypress's request for admissions, that it failed to pay any defense costs relating to the defense of the underlying lawsuit; that it failed to pay any money for anything having to do with lawsuit; that it wrote to the attorney for B-K Cypress that it was going to provide a defense under a reservation of rights; that it failed to notify B-K Cypress that it was withdrawing its defense; that the rescheduled mediation of December 19, 2005, regarding the claims brought by the Sentis against B-K Cypress, was confirmed with the insurance company on December 12, 2005; that it failed to inquire as to the outcome of the arbitration hearing on October 5, 2006; that it failed to pay the bill for the arbitration hearing; that it failed

7

to pay the invoices submitted on behalf of B-K Cypress for defense fees and costs in the underlying action; that it failed to provide B-K Cypress with a defense to the claims brought by the Sentis against B-K Cypress; and that it failed to indemnify B-K Cypress for the claims brought by the Sentis.

37.    Auto-Owners also committed numerous discovery violations throughout the course of the coverage litigation, as part of its bad faith litigation conduct to stonewall B-K Cypress and prevent it from obtaining relevant information relating to its claim, resulting in the impositions of sanctions against Auto-Owners, both voluntarily accepted and imposed by the Court.

38.    On April 7, 2008, Auto-Owners improperly served an insufficient subpoena for deposition upon B-K Cypress's president in his individual capacity, resulting in a motion for protective order by B-K Cypress and an agreement by Auto-Owners to pay B-K Cypress the attorney's fees and costs it incurred as a result of the improper subpoena.

39.    In September 2008, Auto-Owners asserted untimely and frivolous objections to B-K Cypress's first set of interrogatories and first request for production of documents and failed to provide any of the requested information, resulting in two motions to compel and for sanctions by B-K Cypress. Despite several attempts by B-K Cypress to resolve the issues raised by the motions, Auto-Owners refused to change its position without any basis for doing so. Thus, on October 29, 2008, the Court granted the motions to compel, ordered Auto-Owners to provide the requested information, and imposed sanctions in the amount of $500. The Court also chastised Auto-Owners' counsel, Anthony LaNasa, at several points during the hearing based on the insurance company's bad faith conduct and complete lack of initiative in moving the case forward, stating:

8

THE COURT: How come the insurance company didn't answer the interrogatories with any more specificity than they did?   I mean, it sounds like it's just a pretty superficial answer without any thought or work into it. That's what interrogatories are all about. Why is that such a vague answer?

\* \* \* \*

THE COURT: So I'm just curious, Mr. LaNasa, why – the question still stands. I don't think I got an answer for it. Why are the affirmative defenses or the answers to the interrogatories directed about the affirmative defenses, why are they so superficial and nonhelpful in terms of advancing the litigation forward or narrowing litigation?

\* \* \* \*

THE COURT: I want to see – right now, Mr. LaNasa, you'll forgive me for saying this, but there's an appalling lack of initiative here on your side of the table. . . . I am puzzled by what appears to be a total lack of willingness to engage and get this case moving forward. . . . I'm happy to hear what are you going to do, what's your client going to do to get this case moving forward.

\* \* \* \*

THE COURT: But, again, there seems to be not much enthusiasm on moving the case forward and I'm just concerned about that.

40.     As a direct and proximate result of Auto-Owners' intentional actions and inactions, the Sentis' claim, which could have been resolved as early as 1999, was not resolved until 2008 – nine years later – when Auto-Owners finally admitted its duty to defend and indemnify by paying the Sentis $275,000 for the underlying claim and paying B-K Cypress $31,936.31 for the attorney's fees and costs it incurred in the underlying litigation.

41.     Moreover, Auto-Owners' bad faith conduct continued into the dispute over the attorney's fees and costs incurred by B-K Cypress in the coverage litigation, when, on December

9

2, 2008, Auto-Owners improperly attempted to condition the settlement of B-K Cypress's fee and cost claim, which it is clearly liable for, upon B-K Cypress's release of its bad faith claim.

42.    At all times material, Auto-Owners:

a.    Was a sophisticated business entity, with a history of insuring thousands of commercial enterprises including small commercial enterprises such as B-K Cypress.

b.    Knew that its conduct and its counsel's conduct as described above toward its insured, B-K Cypress, over a nine year period, was certain or substantially certain to cause: (1) loss of irreplaceable creative time of key managerial personnel as a result of having to investigate and defend these claims, when Auto-Owners should have done so; (2) loss of productivity and business opportunities as a result of having to spend time and resources on the investigation and defense of the claims, rather than on marketing, advertising, product development, and other activities designed to improve and expand the business; (3) damage to B-K Cypress's business reputation based on its inability to resolve the claims to its customers' satisfaction; (4) loss of customer goodwill as a result of B-K Cypress's inability to resolve the claims to its customers' satisfaction, including the loss of positive recommendations to potential buyers; (5) loss of advantageous business arrangements, such as bulk discounts, as a result of having to spend financial resources on the investigation and defense of the claims; (6) damage to B-K Cypress's credit reputation as a result of its inability to timely pay its bills; (7) fees, interest, and other charges incurred as a result of B-K Cypress's inability to timely pay its bills; (8) loss of advantageous credit terms as a result of B-K Cypress's inability to timely pay its bills; and (9) lessening of cash reserves as a result of having to spend financial resources on the investigation and defense of the claims.

10

43.     Auto-Owners' actions, over a period of nine years, were a determined course of conduct to act in bad faith, and in reckless disregard for the rights of B-K Cypress.

## GENERAL BUSINESS PRACTICE ALLEGATIONS UNDER
### FLA. STAT. §§624.155(5) AND 626.9541(1)(i)(3)

44.     The above acts and conduct by Auto-Owners and its counsel occurred with such frequency so as to indicate a general business practice on the part of Auto-Owners to engage in conduct that is in reckless disregard for the rights of its insureds, within the meaning of Fla. Stat. §624.155(5).

45.     The above acts and conduct by Auto-Owners and its counsel occurred with such frequency so as to indicate a general business practice on the part of Auto-Owners to engage in the following conduct within the meaning of Fla. Stat. §626.9541(1)(i)(3), included within Fla. Stat. §624.155(1)(a)(1):

a.     Failing to adopt and implement standards for the proper investigation of claims;

b.     Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

c.     Failing to acknowledge and act promptly upon communications with respect to claims;

d.     Denying claims without conducting reasonable investigations based upon available information;

e.     Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

f.     Failing to promptly notify the insured of any additional information necessary for the processing of a claim; and

11

g.     Failing to properly defend its insureds.

46.    It is expected that discovery will reveal more, but at this time three other cases and years-long examples of such general business practices are known as to B-K Cypress in addition to the Senti case.

## DAMAGES

47.    As a direct and proximate result of the actions of Auto-Owners and/or its counsel alleged above, B-K Cypress has incurred substantial damages, including but not limited to the following:

a.     Loss of irreplaceable creative time of key managerial personnel as a result of having to investigate and defend the claims.

b.     Loss of productivity and business opportunities as a result of having to spend time and resources on the investigation and defense of the claims, rather than on marketing, advertising, product development, and other activities designed to improve and expand the business.

c.     Damage to B-K Cypress's business reputation based on its inability to resolve the claims to its customers' satisfaction.

d.     Loss of customer goodwill as a result of B-K Cypress's inability to resolve the claims to its customers' satisfaction, including the loss of positive recommendations to potential buyers.

e.     Loss of advantageous business arrangements, such as bulk discounts, as a result of having to spend financial resources on the investigation and defense of the claims.

f.     Damage to B-K Cypress's credit reputation as a result of its inability to timely pay its bills.

12

g.      Fees, interests, and other charges incurred as a result of B-K Cypress's inability to timely pay its bills.

h.      Loss of advantageous credit terms as a result of B-K Cypress's inability to timely pay its bills.

i.      Lessening of cash reserves as a result of having to spend financial resources on the investigation and defense of the claims.

j.      Pre-judgment interest on all economic damages.

k.      Attorney's fees and costs, pursuant to Fla. Stat. §624.155(4), for undersigned counsel retained by B-K Cypress to bring this action, and to whom B-K Cypress is obligated to pay a reasonable attorney's fee.

WHEREFORE, plaintiff, B-K CYPRESS LOG HOMES, INC., a Florida corporation, demands judgment against defendant, AUTO-OWNERS INSURANCE COMPANY, for damages in excess of $75,000, punitive damages, attorney's fees, costs, and pre-judgment interest on all economic damages.

## TRIAL BY JURY

B-K Cypress Log Homes, Inc. demands trial by jury of all issues so triable.

Dated: October 2, 2009.

Respectfully submitted,

SWARTZ CAMPBELL LLC
Steven M. Brady
sbrady@swartzcampbell.com
SunTrust Center
250 South Orange Avenue
Suite P-100
Orlando, Florida 32801
Telephone: (407) 209-1000
Facsimile: (407) 209-1001

13

WINDERWEEDLE, HAINES, WARD
& WOODMAN, P.A.
Robert P. Major
rmajor@whww.com
390 N. Orange Avenue
Suite 1500
Orlando, FL 32801
Telephone: (407) 423-4246
Facsimile: (407) 423-7014

*And*

VER PLOEG & LUMPKIN, P.A.
100 SE 2nd Street
30th Floor
Miami, FL 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3998

_____

**Stephen A. Marino, Jr.**
smarino@vpl-law.com
Florida Bar No. 0079170
*Attorneys for Plaintiff*

14

E
X
H
I
B
I
T

A

**EXHIBIT A**

AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY



*Auto-Owners Insurance*

Life Home Car Business

*The No Problem People®*

BRANCH CLAIM OFFICE
1625 Summit Lake Dr., Suite 105 • P.O. Box 14800
Tallahassee, Florida 32317-7935
850-216-3180   FAX 850-216-3195
888-700-5177
WWW.AUTO-OWNERS.COM

December 21, 2006

Swartz Campbell, LLC
Steven M. Brady
250 S. Orange Avenue, Suite P-100
Orlando, FL 32801

Re:    Our Insured:    Jim and Ada Marie Keeton DBA B K Cypress Log Homes Inc.
       Your Client:    B K Cypress Log Homes, Inc.
       Subject:        DISCLOSURE OF INSURANCE INFORMATION

Dear Mr. Brady:

This will acknowledge receipt of your letter of representation.  Please refer to the above claim
number on all correspondence directed to this office.

Enclosed is a Disclosure of Insurance Information and a copy of our insureds Policy and
Declarations Page indicating the specific coverages and limits. We were unable to pull a complete
policy for the 1995-96 term.  We were able to pull an endorsement showing some of the limits. The
renewals for 1996-97; 98-99; 99-2000; 2000-01 and 2001-02 are attached.  The full complete
declarations are attached for 1996-97. Each subsequent renewal after that only shows the renewal
pages for the dec.  There are no renewals on file for 2003-04; 04-05; 05-06 and 06-07. Also, a final
audit was completed for the 2002-2003 term, which is attached.    Should you have any questions
please contact the undersigned.

Sincerely,

George Williams / BH

George Williams
Asst. Manager Underwriting
Ext. 203

/jf

Enclosures as stated

*~ Serving Our Policyholders and Agents for More Than 90 Years ~*

*Auto-Owners Insurance*

Disclosure of Insurance Information

To:     Swartz Campbell

Re:     Our Insured/Your Client:    Jim & Ada Marie Keeton DBA B K Cypress Log Homes Inc.

The following information is provided pursuant to provisions of FS 627.4137 and at the request of:

Auto-Owners Insurance Company has the following numbered policy(ies) in which Jim & Ada Marie Keeton DBA B K Cypress Homes, Inc. is a named insured:

| Policy No. | Named Insured | Limits of Liability |
|------------|---------------|---------------------|
| 20393748   | Same as Above | See Attached        |

Auto-Owners reasonably believes that a coverage defense exists as to the following policies for the following reasons:

| Policy No. | Reason for Coverage Defense |
|------------|------------------------------|
| 20393748   | none known at the present time |

A copy of the policy(ies) identified above is hereto attached or provided along with this disclosure.

Other insurance which may be available to the above named insured which is known to Auto-Owners at this time is as follows: no other insurance known at this time.

FLORIDA STATUTES PROVIDE THAT: "Any person who knowingly, and with intent to injure, defraud or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony of the third degree."

Dated:                               The foregoing statements are correct to the
                                     best of my knowledge, information and belief

State of Florida

County of Leon                       Brenda Hennenfent, Regional V.P.

The foregoing disclosure of insurance information was acknowledged before me this _2_1_ day of
_December_____, 2006 by Don Cropenbaker.

Notary Public
Leon County, Florida,
My Commission expires: _4/26/09_

Donald C. Cropenbaker, Jr.
Commission # DD422374
Expires April 26, 2009
Bonded Troy Fain - Insurance, Inc. 800-385-7019

**Auto-Owners**                     Page   1                    55055 (7-87)
                                                          Issued  06-18-1997
INSURANCE COMPANY                              TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-5999

AGENCY  SCARBOROUGH CO INSURANCE INC            Change Endorsement Effective 06-10-1997
        12-0204-00
INSURED  JIM & ADA MARIE KEETON                   POLICY NUMBER  884612-20393748-96
         DBA B K CYPRESS LOG HOMES INC

ADDRESS PO BOX 191                              FA  |        POLICY TERM
                                                   |  12:01 a.m.   12:01 a.m.
        BRONSON, FL   32621-0191                   |  10-28-1996 to 10-28-1997


DESCRIPTION OF CHANGE

GENERAL LIABILITY LIMITS OF INSURANCE ARE INCREASED TO:

GENERAL AGGREGATE LIMIT                         $1,000,000
PRODUCTS/COMPLETED OPERATIONS LIMIT             $1,000,000
PERSONAL AND ADVERTISING INJURY LIMIT           $1,000,000
EACH OCCURRENCE LIMIT                           $1,000,000

45


TRANSACTION NUMBER:  004


ENDORSEMENT PREMIUM:  ADDITIONAL                                        $168.17

Agency Code 12-0204-00

Policy Number 884612-20393748

## NOTICE TO POLICYHOLDER

54149 (8-91)

Dear Policyholder:

RE: TENTATIVE COMMERCIAL PROPERTY RATE

A tentative commercial property rate was used to develop the Commercial Property premium for your policy. A property rate, developed by the Insurance Services Office (ISO) in your state, is currently not available for your commercial property.

We have requested a commercial property rate which will be applied to your policy. This adjustment may increase or decrease your premium from the current estimated premium.

The new commercial property rate will be applied as of the inception of the current policy term or the date the property was added to the policy. Please refer to Tentative Rate, Form CP9993.

If you have any questions about tentative rates, please contact your Auto-Owners agent.

AUTO-OWNERS INSURANCE COMPANY

# *Auto-Owners*

Page   1

55039 (11-87)
Issued  10-08-1997
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1997

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-97

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

FA

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 10-28-1997 to | 10-28-1998 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:  Log Home Sales

ENTITY:  Corporation

PROGRAM: Mercantile

| | PREMIUM |
|---|---|
| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | |
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $1,426.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 1,677.00 |
| SURTAX | 3.09 |
| FLORIDA EMERGENCY TRUST FUND SURCHARGE | 4.00 |
| TOTAL | $3,110.09 |

FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
  55000  (01-87)   IL0017 (11-85)   55056  (07-87)

Countersigned By:  _____

**_Auto-Owners_**  Page  1

54104 (07-87)
Issued  10-08-1997
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1997

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-97

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

FA

| POLICY TERM |
|---|
| 12:01 a.m.    12:01 a.m. |
| 10-28-1997 to 10-28-1998 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

### COMMERCIAL PROPERTY COVERAGE

COVERAGES PROVIDED

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
INSURANCE IS SHOWN.

LOCATION 001

ADDITIONAL FORMS THIS LOCATION:  None

LOC 001    BLDG 001 609 Gilbert Street
Bronson, FL  32621

OCCUPIED AS:  Log Home Sales

COVERAGE: Building                    Limit of Insurance    $137,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 90% | $100 | 0.383 | $525.00 |
| Basic Group II | 90% | 100 | 0.179 | 245.00 |
| Special | 90% | 100 | 0.062 | 85.00 |
| Theft | 90% | 100 | | Included |

OPTIONAL COVERAGE:  None

COVERAGE: Pers Prop-Ofc                Limit of Insurance    $45,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 90% | $100 | 0.508 | $229.00 |
| Basic Group II | 90% | 100 | 0.180 | 81.00 |
| Special | 90% | 100 | 0.109 | 49.00 |
| Special Including Theft | 90% | 100 | 0.471 | 212.00 |

OPTIONAL COVERAGE:  None

ADDITIONAL FORMS THIS BUILDING:  CP1218 (10-91)  CP0090 (07-88)  CP0125 (10-90)
CP0010 (10-91)  CP1030 (10-91)

SECURED INTERESTED PARTIES:  See Attached Schedule

RATING INFORMATION

Territory:  385                    County:  Levy
Program:  Mercantile              Construction:  Frame
Class Rate - Building:  0.465      Protection Class:  07
Class Code:  0702

LOCATION 001    PREMIUM          $1,426.00

**Auto-Owners**  Page  2    54104 (07-87)
Issued  10-08-1997
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC
Renewal Effective 10-28-1997

12-0204-00
POLICY NUMBER  884612-20393748-97

INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

FA
| POLICY TERM |
| 12:01 a.m.   12:01 a.m. |
| 10-28-1997 to 10-28-1998 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMERCIAL PROPERTY COVERAGE

ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)  54113  (07-88)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION


ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION


ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION


ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION

*Auto-Owners*                        Page   3                    54104 (07-87)
                                                                  Issued   10-08-1997
                                                        TAILORED PROTECTION POLICY DECLARATIONS
INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999
                                                           Renewal Effective 10-28-1997
AGENCY   SCARBOROUGH CO INSURANCE INC
         12-0204-00                                     POLICY NUMBER   884612-20393748-97
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                              FA  |      POLICY TERM
                                                     |  12:01 a.m.   12:01 a.m.
         BRONSON, FL   32621-0191                    | 10-28-1997 to 10-28-1998

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMERCIAL PROPERTY COVERAGE

ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION



ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION



ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION



ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None

RATING INFORMATION

**Auto-Owners**

Page    4

54104 (07-87)
Issued  10-08-1997
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1997

AGENCY SCARBOROUGH CO INSURANCE INC
12-0204-00
INSURED B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-97

ADDRESS PO BOX 191

BRONSON, FL  32621-0191

FA

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 10-28-1997 to | 10-28-1998 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMERCIAL PROPERTY COVERAGE

ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:   None

RATING INFORMATION


ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:   None

RATING INFORMATION


LOCATION      PREMIUM

## *Auto-Owners*

Page   5

59187 (07-87)
Issued  10-08-1997
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1997

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER   884612-20393748-97

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

FA

| POLICY TERM |
| 12:01 a.m.   12:01 a.m. |
| 10-28-1997 to 10-28-1998 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES

Applies to Loc/Bldg(s):
001/001
 AT&T C/O LEASING INS AGENCY
 PO BOX 96064
 BELLEVUE, WA  90880
 Interest: Loss Payable

Applies to Loc/Bldg(s):
001/001
 AT & T CREDIT CORPORATION
 %LEASE INS AGENCY SERVICES
 PO BOX 96064
 ACCT #1650E02412700010
 BELLEVUE, WA  98009

 Interest: Loss Payable

***Auto-Owners***

Page 1

55040 (11/87)
Issued 10-08-1997
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1997

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00

POLICY NUMBER  884612-20393748-97

INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

| FA | POLICY TERM |
| | 12:01 a.m.   12:01 a.m. |

BRONSON, FL  32621-0191

10-28-1997 to 10-28-1998

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

## COMMERCIAL GENERAL LIABILITY COVERAGE

LIMITS OF INSURANCE
  General Aggregate Limit                                          $1,000,000
    (Other Than Products-Completed Operations)
  Products-Completed Operations Aggregate Limit                   1,000,000
  Personal And Advertising Injury Limit                           1,000,000
  Each Occurrence Limit                                           1,000,000
  Fire Damage Limit                                                  50,000 Any One Fire
  Medical Expense Limit                                               5,000 Any One Person

"General Aggregate Limit" shown above, is reinstated once per policy period at no
additional charge, in accordance with form 55050.

AUDIT TYPE: Annual Audit

FORMS THAT APPLY TO LIABILITY: IL0021 (11-85)  55081 (08-88)  55029 (07-87)
CG0001 (11-88)  IL0017 (11-85)  55050 (07-87)  55064 (07-87)  CL175 (02-86)
55069 (01-88)  CG0220 (07-92)  55118 (08-91)  CG2147 (09-89)  55137 (06-92)
55146 (07-96)  55157 (07-96)  59246 (10-96)

LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 001  BLDG 001 609 Gilbert Street
             Bronson, FL  32621

TERRITORY:  006  COUNTY:  Levy

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| CODE 12362<br>Distributors - No Food Or Drink<br>Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>541,772<br>541,772 | Each 1000<br>.183<br>2.271 | $99.00<br>$1,230.00 |
| CODE 91340<br>Carpentry - Construction Of<br>Residential Property Not Exceeding<br>Three Stories In Height | Prem/Op<br>Prod/Comp Op | Payroll<br>15,900<br>15,900 | Each 1000<br>17.506<br>4.382 | $278.00<br>$70.00 |

LOCATION  001  PREMIUM                    $1,677.00

**Auto-Owners**                    Page  1                    55056 (07-87)
                                                             Issued  10-08-1997
INSURANCE COMPANY                          TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                    Renewal Effective 10-28-1997

AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                         POLICY NUMBER  884612-20393748-97
INSURED  B K CYPRESS LOG HOMES INC

                                           FA  |      POLICY TERM
ADDRESS PO BOX 191                             |  12:01 a.m.   12:01 a.m.
                                               | 10-28-1997 to 10-28-1998
        BRONSON, FL  32621-0191

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                          SUPPLEMENTAL DECLARATIONS

COMPLETE NAMED INSURED:

JIM & ADA MARIE KEETON
DBA B K CYPRESS LOG HOMES INC
& LOGSMITHS OF AMERICA INC

CP 01 25 10 90
COMMERCIAL PROPERTY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

A. When this endorsement is attached to the Standard Property Policy CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

B. The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the insured.

C. The following is added:

If the loss or damage to Covered property is caused by or results from Windstorm, the following exclusion applies in:

1. Broward County;

2. Dade County;

3. Martin County;

4. Monroe County;

5. Palm Beach County; and

6. All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

    a. Indian River; and

    b. St. Lucie.

**Windstorm Exterior Paint and Waterproofing Exclusion**

We will not pay for loss or damage to:

1. Paint; or

2. Waterproofing material;

applied to the exterior of Buildings.

We will not include the value of paint or waterproofing material to determine:

a. The amount of the Windstorm or Hail Deductible; or

b. The value of Covered Property when applying the Coinsurance Condition.

D. The LOSS PAYMENT Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage:

1. Within 20 days after we receive the sworn statement of loss and reach written agreement with you; or

2. Within 30 days after we receive the sworn statement of loss and:

    a. There is an entry of a final judgment; or

    b. There is a filing of an appraisal award with us.

E. 1. Paragraph A.10., SINKHOLE COLLAPSE, of the Causes of Loss - Basic Form and the Causes of Loss - Broad Form;

2. Paragraph A.2.c.(8) of COVERED CAUSES OF LOSS of the Mortgage Holder's Errors and Omissions Coverage Form; and

3. Paragraph A.3.h., SINKHOLE COLLAPSE, of the Standard Property Policy;

are replaced by the following:

Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

a. The cost of filling sinkholes; or

b. Sinking or collapse of land into man-made underground cavities.

Copyright, ISO Commercial Risk Services, Inc., 1984, 1989

Agency Code 12-0204-00

Policy Number 884612-20393748

F.    Paragraph F.1. of DEFINITIONS of the Causes of Loss - Special Form is replaced by the following:

1.    Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.    This cause of loss does not include:

a.    The cost of filling sinkholes; or

b.    Sinking or collapse of land into man-made underground cavities.

Copyright, ISO Commercial Risk Services, Inc., 1984, 1989

Page 2 of 2

CP 12 18 10 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

**SCHEDULE**

| | Provisions Applicable | |
|---|---|---|
| Loss Payable | Lender's Loss Payable | Contract Of Sale |

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) |
|---|---|---|---|
| | | | |

A. When this endorsement is attached to the STAND-ARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

B. **LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

C. **LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Agency Code 12-0204-00

d. Financing statements; or

e. Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

   All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

   (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

   At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D. CONTRACT OF SALE

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear;

3. The following is added to the OTHER INSURANCE Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

          Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

CP 00 90 07 88

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

## I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

Copyright, Insurance Services Office, Inc., 1983, 1987                    Page 1 of 2

Agency Code 12-0204-00

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1.  Prior to a loss to your Covered Property or Covered Income.

2.  After a loss to your covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a.  Someone insured by this insurance;

    b.  A business firm:

        (1)  Owned or controlled by you; or

        (2)  That owns or controls you; or

    c.  Your tenant.

This will not restrict your insurance.

Copyright, Insurance Services Office, Inc., 1983, 1987

Agency Code 12-0204-00                                Policy Number 884612-20393748

CP 00 10 10 91
COMMERCIAL PROPERTY

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H - DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a. **Building,** meaning the building or structure described in the Declarations, including:

   (1) Completed additions;

   (2) Permanently installed:

     (a) Fixtures;

     (b) Machinery; and

     (c) Equipment;

   (3) Outdoor fixtures;

   (4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

     (a) Fire extinguishing equipment;

     (b) Outdoor furniture;

     (c) Floor coverings; and

     (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

   (5) if not covered by other insurance:

     (a) Additions under construction, alterations and repairs to the building or structure;

     (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation of Coverage form:

   (1) Furniture and fixtures;

   (2) Machinery and equipment;

   (3) "Stock;"

   (4) All other personal property owned by you and used in your business;

   (5) Labor, materials or services furnished or arranged by you on personal property of others;

   (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

     (a) Made a part of the building or structure you occupy but do not own; and

     (b) You acquired or made at your expense but cannot legally remove;

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990                 Page 1 of 9

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

c. **Personal Property of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of the buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns;

i. Personal property while airborne or waterborne;

j. Pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of the building described in the Declarations;

m. Underground pipes, flues or drains;

n. The cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions;

o. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale; or

(c) Rowboats or canoes out of water at the described premises;

p. The following property while outside of buildings:

(1) Grain, hay, straw or other crops;

(2) Fences, radio or television antennas, including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

3. **Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Coverages**

a. **Debris Removal**

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

          Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

(b) The deductible in this policy ap-
plicable to that loss or damage.

But this limitation does not apply
to any additional debris removal
limit provided in the Limits of In-
surance section.

(3) This Additional Coverage does not ap-
ply to costs to:

(a) Extract "pollutants" from land or
water; or

(b) Remove, restore or replace pol-
luted land or water.

b.  Preservation of Property

If it is necessary to move Covered Property
from the described premises to preserve it
from loss or damage by a Covered Cause
of Loss, we will pay for any direct physical
loss or damage to that property:

(1) While it is being moved or while tem-
porarily stored at another location; and

(2) Only if the loss or damage occurs
within 10 days after the property is first
moved.

c.  Fire Department Service Charge

When the fire department is called to save
or protect Covered Property from a Cov-
ered Cause of Loss, we will pay up to
$1,000 for your liability for fire department
service charges:

(1) Assumed by contract or agreement
prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional
Coverage.

d.  Pollutant Clean Up and Removal

We will pay your expense to extract "pol-
lutants" from land or water at the described
premises if the discharge, dispersal, seep-
age, migration, release or escape of the
"pollutants" is caused by or results from a
Covered Cause of Loss that occurs during
the policy period. The expenses will be
paid only if they are reported to us in writ-
ing within 180 days of the date on which the
Covered Cause of Loss occurs.

This Additional Coverage does not apply to
costs to test for, monitor or assess the ex-
istence, concentration or effects of "pollu-
tants". But we will pay for testing which is
performed in the course of extracting the
"pollutants" from the land or water.

Policy Number B84612-20393748

The most we will pay under this Additional
Coverage for each described premises is
$10,000 for the sum of all covered expenses
arising out of Covered Causes of Loss oc-
curring during each separate 12 month pe-
riod of this policy.

5.  Coverage Extensions

Except as otherwise provided, the following Ex-
tensions apply to property located in or on the
building described in the Declarations or in the
open (or in a vehicle) within 100 feet of the de-
scribed premises.

If a Coinsurance percentage of 80% or more or,
a Value Reporting period symbol, is shown in
the Declarations, you may extend the insurance
provided by this Coverage Part as follows:

a.  Newly Acquired or Constructed Property

(1) You may extend the insurance that
applies to Building to apply to:

(a) Your new buildings while being
built on the described premises;
and

(b) Buildings you acquire at locations,
other than the described prem-
ises, intended for:

(i) Similar use as the building
described in the Declarations;
or

(ii) Use as a warehouse.

The most we will pay for loss or dam-
age under this Extension is 25% of the
Limit of Insurance for Building shown
in the Declarations, but not more than
$250,000 at each building.

(2) You may extend the insurance that
applies to Your Business Personal
Property to apply to that property at
any location you acquire other than at
fairs or exhibitions.

The most we will pay for loss or dam-
age under this Extension is 10% of the
Limit of Insurance for Your Business
Personal Property shown in the Decla-
rations, but not more than $100,000 at
each building.

(3) Insurance under this Extension for
each newly acquired or constructed
property will end when any of the fol-
lowing first occurs:

(a) This policy expires.

**(b)** 30 days expire after you acquire or begin to construct the property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

**b.  Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal proeprty of others will only be for the account of the owner of the property.

**c.  Valuable Papers and Records - Cost of Research**

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $1,000 at each described premises.

**d.  Property Off-Premises**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than "stock", that is temporarily at a location you do not own, lease or operate. This Extension does not apply to Covered Property:

**(1)** In or on a vehicle;

**(2)** In the care, custody or control or your salespersons; or

**(3)** At any fair or exhibition.

The most we will pay for loss or damage under this Extension is $5,000.

**e.  Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas, signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following cause of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.

Each of these Exclusions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Exclusions.

**B.  EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C.  LIMITS OF INSURANCE**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

**1.** Preservation of Property; or

**2.** Debris Removal; but if:

    **a.** The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

    **b.** The debris removal expense exceeds the amount payable under 25% limitation in the Debris Removal Additional Coverage;

we will pay up to an additional $5,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**D.  DEDUCTIBLE**

    Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance condition or the Agreed Value Optional Coverage.

## E. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties In The Event Of Loss Or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4. Loss Payment

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of loss or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

d.  We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

e.  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

f.  We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if:

(1)  You have complied with all of the terms of this Coverage Part; and

(2)  (a)  We have reached agreement with you on the amount of loss; or

(b)  An appraisal award has been made.

### 5.  Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

### 6.  Vacancy

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:

a.  Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(1)  Vandalism;

(2)  Sprinkler leakage, unless you have protected the system against freezing;

(3)  Building glass breakage;

(4)  Water damage;

(5)  Theft; or

(6)  Attempted theft.

b.  Reduce the amount we would otherwise pay for the loss or damage by 15%.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

Buildings under construction are not considered vacant.

### 7.  Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a.  At actual cash value as of the time of loss or damage, except as provided in b., c., d., e. and f. below.

b.  If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

This provision does not apply to the following even when attached to the building:

(1)  Awnings or floor coverings;

(2)  Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3)  Outdoor equipment or furniture.

c.  "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d.  Glass at the cost of replacement with safety glazing material if required by law.

e.  Tenant's Improvements and Betterments at:

(1)  Actual cash value of the lost or damaged property if you make repairs promptly.

(2)  A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a)  Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b)  Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3)  Nothing if others pay for repairs or replacement.

    Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

f. Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

   (1) Blank materials for reproducing the records; and

   (2) Labor to transcribe or copy the records when there is a duplicate.

## F. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Coinsurance**

   If a Coinsurance percentage is shown in the Declarations, the following condition applies.

   a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

      Instead, we will determine the most we will pay using the following steps:

      (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

      (2) Divide the Limit of Insurance of the property by the figure determined in step (1);

      (3) Multiply the total amount of loss, before the application of any deductible by the figure determined in step (2); and

      (4) Subtract the deductible from the figure determined in step (3).

      We will pay the amount determined in step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

      **Example No. 1** (Underinsurance):
      When:

      | | |
      |---|---|
      | The value of property is | $250,000 |
      | The Coinsurance percentage for it is | 80% |
      | The Limit of insurance for it is | $100,000 |
      | The Deductible is | $250 |
      | The amount of loss is | $ 40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2** (Adequate insurance): When:

| | |
|---|---|
| The value of the property is | $250,000 |
| The Coinsurance percentage for it is | 80% |
| The Limit of insurance for it is | $200,000 |
| The Deductible is | $250 |
| The amount of loss is | $40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $200,000 ÷ $200,000 = 1.00

Step (3): $40,000 x 1.00 = $40,000

Step (4): $40,000 - $250 = $39,750

We will cover the $39,750 loss in excess of the Deductible. No penalty applies.

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

   **Example No. 3:**
   When:

   | | |
   |---|---|
   | The value of the property is: | |
   | Bldg. at Location No. 1 | $75,000 |
   | Bldg. at Location No. 2 | $100,000 |
   | Personal Property at Location No. 2 | $75,000 |
   | | $250,000 |
   | The Coinsurance percentage for it is | 90% |
   | The Limit of insurance for the Buildings and Personal Property at Location Nos. 1 and 2 is | $180,000 |
   | The Deductible is | $1,000 |
   | The amount of loss is Bldg. at Location No. 2 | $30,000 |
   | Personal Property at Location No. 2 | $20,000 |
   | | $50,000 |

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Agency Code **12-0204-00**

Step (1): $250,000 \times 90\% = \$225,000$ (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $\$180,000 \div \$225,000 = .80$

Step (3): $\$50,000 \times .80 = \$40,000$

Step (4): $\$40,000 - \$1,000 = \$39,000.$

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. **Mortgage Holders**

a. The term "mortage holder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

   (2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

   All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

   (1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

G. **OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

1. **Agreed Value**

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

   (1) On or after the effective date of this Optional Coverage; and

   (2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

2. **Inflation Guard**

a. The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

   (1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or

    Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:
If:

| | |
|---|---|
| The applicable Limit of Insurance is | $100,000 |
| The annual percentage increase is | 8% |
| The number of days since the beginning of the policy year (or last policy change) is | 146 |
| The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $3,200 |

3. **Replacement Cost**

a. Replacement Cost: (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Property of others;

(2) Contents of a residence;

(3) Manuscripts;

(4) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(5) "Stock," unless the including "Stock" option is shown in the Declarations.

c. You may make a claim for loss or damage covered by this insurance on an actual

cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e. We will not pay more for loss or damage on a replacement cost basis than the least of:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same premises, the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

H. **DEFINITIONS**

1. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Agency Code 12-0204-00                                      Policy Number 884612-20393748

CP 10 30 10 91
COMMERCIAL PROPERTY

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section F. - Definitions.

## A. COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations;

that follow.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. Ordinance or Law

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   b. Earth Movement

   (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

   (2) Volcanic eruption, explosion or effusion. But if loss or damage by fire, building glass breakage or volcanic actions results, we will pay for that resulting loss or damage.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   c. Governmental Action

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

   d. Nuclear Hazard

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   But if loss or damage by fire results, we will pay for that resulting loss or damage.

   e. Off-Premises Services

   The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

   But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   f. War And Military Action

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defend-

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990                    Page 1 of 6

ing against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g.  **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

  (a) Foundations, walls, floors or paved surfaces;

  (b) Basements, whether paved or not; or

  (c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

2.  We will not pay for loss or damage caused by or resulting from any of the following:

a.  Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

   But if loss or damage by fire results, we will pay for that resulting loss or damage.

b.  Delay, loss of use or loss of market.

c.  Smoke, vapor or gas from agricultural smudging or industrial operations.

d.  (1) Wear and tear;

   (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   (3) Smog;

   (4) Settling, cracking, shrinking or expansion;

(5) Insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, this does not apply to any resulting loss or damage caused by elevator collision;

(7) The following causes of loss to personal property:

  (a) Dampness or dryness of atmosphere;

  (b) Changes in or extremes of temperature; or

  (c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

e.  Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if loss or damage by fire or combustion explosions results, we will pay for that resulting loss or damage. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f.  Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

g.  Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   (1) You do your best to maintain heat in the building or structure; or

   (2) You drain the equipment and shut off the supply if the heat is not maintained.

h.  Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   (1) Acting alone or in collusion with others; or

   (2) Whether or not occurring during the hours of employment.

        Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Agency Code 12-0204-00

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

I.  Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

J.  Rain, snow, ice or sleet to personal property in the open.

k.  Collapse, except as provided below in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage.

l.  Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified causes of loss."

3.  We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for the resulting loss or damage.

a.  Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c.  Faulty, inadequate or defective:

    (1)  Planning, zoning, development, surveying, siting;

    (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3)  Materials used in repair, construction, renovation or remodeling; or

    (4)  Maintenance;

    of part or all of any property on or off the described premises.

4.  **Special Exclusions**

    The following provisions apply only to the specified Coverage Forms.

a.  **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

    We will not pay for:

    (1)  Any loss caused by or resulting from:

        (a)  Damage or destruction of "finished stock;" or

        (b)  The time required to reproduce "finished stock."

        This exclusion does not apply to Extra Expense.

    (2)  Any loss caused by or resulting from direct physical loss or damage to radio or television antennas, including their lead-in wiring, masts or towers.

    (3)  Any increase of loss caused by or resulting from:

        (a)  Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

        (b)  Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

    (4)  Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

    (5)  Any other consequential loss.

b.  **Leasehold Interest Coverage Form**

    (1)  Paragraph B.1.a. Ordinance or Law, does not apply to insurance under this Coverage Form.

    (2)  We will not pay for any loss caused by:

        (a)  Your cancelling the lease;

        (b)  The suspension, lapse or cancellation of any license; or

        (c)  Any other consequential loss.

c.  **Legal Liability Coverage Form**

(1) The following Exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph B.1.a., Ordinance or Law;

(b) Paragraph B.1.c., Governmental Action;

(c) Paragraph B.1.d., Nuclear Hazard;

(d) Paragraph B.1.e., Power Failure; and

(e) Paragraph B.1.f., War and Military Action.

(2) **Contractual Liability**

We will not defend any claim or "suit," or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

(3) **Nuclear Hazard**

We will not defend any claim or "suit," or pay any damges, loss, expense or obligation, resulting from nuclear re-action or radiation, or radioactive con-tamination, however caused.

## C. LIMITATIONS

1. We will not pay for loss of or damage to:

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether dri-ven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust en-ters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not at-tached as part of the building or structure, unless held for sale by you, caused by or resulting from theft, except as provided in C.5.a. below.

   e. Property that is missing, where the only evidence of the loss or damage is a short-age disclosed on taking inventory, or other instances where there is no physical evi-dence to show what happened to the prop-erty.

   f. Gutters and downspouts caused by or re-sulting from weight of snow, ice or sleet.

   g. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized in-structions.

2. We will not pay more for loss of or damage to glass that is part of a building or structure than $100 for each plate, pane, multiple plate insu-lating unit, radiant or solar heating panel, jal-ousie, louver or shutter. We will not pay more than $500 for all loss of or damage to building glass that occurs at any one time.

   This Limitation does not apply to loss or dam-age by the "specified causes of loss," except vandalism.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other data processing, recording or storage media, and other re-cords.

   b. Animals, and then only if they are killed or their destruction is made necessary.

   c. Fragile articles such as glassware, statu-ary, marbles, chinaware and procelains, if broken. This restriction does not apply to:

      (1) Glass that is part of a building or structure;

      (2) Containers of property held for sale; or

      (3) Photographic or scientific instrument lenses.

   d. Builders' machinery, tools, and equipment you own or that are entrusted to you, while

     Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Agency Code 12-0204-00

away from the premises described in the Declarations, except as provided in paragraph C.5.b. below.

4. For loss or damage by theft, the following types of property are covered only up to the limits shown:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, plantinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $2,500 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

5. **Builders' Risk Coverage Form Limitations**

   The following provisions apply only to the Builders' Risk Coverage Form.

   a. Limitation 1.d. is replaced by the following:

      d. Building materials and supplies not attached as part of the building or structure caused by or resulting from theft.

   b. Limitation 3.d. is replaced by the following:

      d. Builders' machinery, tools and equipment you own or that are entrusted to you.

6. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

## D. ADDITIONAL COVERAGE - COLLAPSE

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

1. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

2. Hidden decay;

3. Hidden insect or vermin damage;

4. Weight of people and personal property;

5. Weight of rain that collects on a roof;

6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

We will not pay for loss or damage to the following types of property, if otherwise covered in this Coverage Part, under items 2., 3., 4., 5. and 6. unless the loss or damage is a direct result of the collapse of a building:

outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings, gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

## E. ADDITIONAL COVERAGE EXTENSIONS

1. **Property In Transit.** This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Agency Code 12-0204-00

c. The most we will pay for loss or damage under this Extension is $1000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to the Extension.

2. **Water Damage, Other Liquids, Powder or Molten Material Damage.** If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes

## F.   DEFINITIONS

"Specified Causes of Loss" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of ice and snow, ice or sleet; water damage.

Policy Number 884612-20393748

1. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   a. The cost of filling sinkholes; or

   b. Sinking or collapse of land into man-made underground cavities.

2. Falling objects does not include loss or damage to:

   a. Personal property in the open; or

   b. The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance contanining water or steam.

          Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

CL 175 (2-86)

# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART

### READ YOUR POLICY CAREFULLY

The Commercial General Liability Coverage Part in your policy consists of Declarations, a Coverage Form (either CG 00 01 or CG 00 02), Common Policy Conditions and Endorsements, if applicable. Following is a Quick Reference indexing of the principal provisions contained in each of the components making up the Coverage Part, listed in sequential order, except for the provisions in the Declarations which may not be in the sequence shown.

**DECLARATIONS**
    Named Insured and Mailing Address
    Policy Period
    Description of Business and Location of Premises
    Limits of Insurance
    Forms and Endorsements applying to the Coverage Part at time of issue

**COVERAGE FORM (CG 00 01 or CG 00 02)**
    SECTION I—COVERAGES
        Coverage A—Bodily Injury and Property Damage Liability
            Insuring Agreement
            Exclusions
        Coverage B—Personal and Advertising Injury Liability
            Insuring Agreement
            Exclusions
        Coverage C—Medical Payments
            Insuring Agreement
            Exclusions
        Supplementary Payments
    SECTION II—WHO IS AN INSURED
    SECTION III—LIMITS OF INSURANCE
    SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS
        Bankruptcy
        Duties in the Event of Occurrence, Claim or Suit
        Legal Action Against Us
        Other Insurance
        Premium Audit
        Representations
        Separation of Insureds
        Transfer of Rights of Recovery Against Others to Us
        When We Do Not Renew (applicable to CG 00 02 only)
        Your Right to Claim and "Occurrence" Information (applicable to CG 00 02 only)
    SECTION V—EXTENDED REPORTING PERIODS (applicable to CG 00 02 only)
    SECTION VI—DEFINITIONS (SECTION V IN CG 00 01)

**COMMON POLICY CONDITIONS (IL 00 17)**
    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1984, 1986.

55157 (7-96)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES - DEDUCTIBLE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

#### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $<br>$ | per claim<br>per occurrence |
| Property Damage Liability | $<br>$ 250 | per claim<br>per occurrence |
| Bodily Injury Liability and Property Damage Liability Combined | $<br>$ | per claim<br>per occurrence |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):-

APPLIES TO PREMISES OPERATIONS FOR CLASS CODES 12362 AND 91340.

1. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to "each occurrence" for such coverages will be reduced by the amount of such deductible. "Aggregate" limits for such coverages shall not be reduced by the application of such deductible amount.

2. The deductible amounts stated in the Schedule apply as follows:

   A. **PER CLAIM BASIS** - If the deductible is on a "per claim" basis, the deductible amount applies:

      1. Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

         a. To all damages because of "bodily injury" sustained by one person, or

      b. To all damages because of "property damage" sustained by one person or organization,

      as the result of any one "occurrence."

   2. Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence."

   3. The deductible amount shall apply to no more than 10 separate claims for damages as the result of any one "occurrence".

   B. **PER OCCURRENCE BASIS** - If the deductible is on a "per occurrence" basis, the deductible amount applies:

      1. Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

         a. To all damages because of "bodily injury" as the result of any one "occurrence," or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Agency Code 12-0204-00

    **b.** To all damages because of "property damage" as the result of any one "occurrence."

regardless of the number of persons or organizations who sustain damages because of that "occurrence."

**2.** Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence."

**3.** The terms of this insurance, including those with respect to:

    **(a)** Our right and duty to defend any "suits" seeking those damages; and

    **(b)** Your duties in the event of an "occurrence," claim, or suit

apply irrespective of the application of the deductible amount.

**4.** We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

                    Copyright, Insurance Services Office, Inc., 1984

Agency Code 12-0204-00                                        Policy Number 884612-20393748

CG 02 20 07 92
COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART LIQUOR LIABILITY COVERAGE PART POLLUTION LIABIL-
ITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraph **2.** of the CANCELLATION Common Policy
Condition is replaced by the following:

   2.   CANCELLATION OF POLICIES IN EFFECT:

        a.   FOR 90 DAYS OR LESS

             If this policy has been in effect for 90 days
             or less, we may cancel this policy by mail-
             ing or delivering to the first Named Insured
             written notice of cancellation, accompanied
             by the reasons for cancellation, at least:

             (1)  10 days before the effective date of
                  cancellation if we cancel for nonpay-
                  ment of premium; or

             (2)  20 days before the effective date of
                  cancellation if we cancel for any other
                  reason, except we may cancel imme-
                  diately if there has been:

                  (a)  A material misstatement or mis-
                       representation; or

                  (b)  A failure to comply with the un-
                       derwriting requirements estab-
                       lished by the insurer.

        b.   FOR MORE THAN 90 DAYS

             If this policy has been in effect for more
             than 90 days, we may cancel this policy
             only for one or more of the following rea-
             sons:

             (1)  Nonpayment of premium;

             (2)  The policy was obtained by a material
                  misstatement;

             (3)  Failure to comply with underwriting
                  requirements within 90 days of the ef-
                  fective date of coverage;

             (4)  A substantial change in the risk cov-
                  ered by the policy; or

             (5)  The cancellation is for all insured's un-
                  der such policies for a given class of
                  insureds.

             If we cancel this policy for any of these
             reasons, we will mail or deliver to the first
             Named Insured written notice of cancella-
             tion, accompanied by the reasons for can-
             cellation, at least:

             (a)  10 days before the effective date of
                  cancellation if we cancel for nonpay-
                  ment of premium;

             (b)  45 days before the effective date of
                  cancellation if we cancel for any of the
                  other reasons stated in paragraph 2.b.

B. The following is added and supersedes any other
   provision to the contrary:

   NONRENEWAL

   1.   If we decide not to renew this policy we will mail
        or deliver to the first Named Insured written
        notice of nonrenewal, accompanied by the rea-
        son for nonrenewal, at least 45 days prior to the
        expiration of this policy.

   2.   Any notice of nonrenewal will be mailed or de-
        livered to the first Named Insured's last mailing
        address known to us. If notice is mailed, proof
        of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1992

Agency Code 12-0204-00                                    Policy Number 884612-20393748

CG 21 47 09 89

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  The following exclusion is added to COVERAGE A (Section I):

    o.  "Bodily injury" arising out of any:

        (1) Refusal to employ;

        (2) Termination of employment;

        (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

        (4) Consequential "bodily injury" as a result of (1) through (3) above.

        This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

2.  The following exclusion is added to COVERAGE B (Section I):

    c.  "Personal injury" arising out of any:

        (1) Refusal to employ;

        (2) Termination of employment;

        (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

        (4) Consequential "personal injury" as a result of (1) through (3) above.

Copyright, Insurance Services Office, Inc., 1988

Agency Code 12-0204-00                                          Policy Number 884612-20393748

## COMMUNICABLE DISEASE EXCLUSION
### Commercial General Liability Coverage Form

55137 (6-92)

It is agreed:

1.  The following exclusion is added and applies to:

    a.  COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY;

    b.  COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY; and

    c.  COVERAGE C. MEDICAL PAYMENTS.

2.  **EXCLUSION**

    This policy does not apply to "bodily injury", "personal injury" or medical expenses for "bodily injury" arising out of or resulting from the transmission of any communicable disease by any "insured".

All other policy terms and conditions apply.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**     55148 (7-96)

## UPSET AND OVERSPRAY COVERAGE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed the coverage for "property damage" liability with respect to your operations is extended as follows:

1. **COVERAGE**

    We will pay those sums which you become legally obligated to pay for "property damage" caused directly by immediate, abrupt and accidental:

    a.  upset, overturn or collision of your "mobile equipment" while transporting; or

    b.  "overspray" during your application or dispersal of;

    "pollutants" which are intended for and normally used in your operations. The operations must be in compliance with local, state, and federal ordinances and laws.

    This is not an additional amount of insurance and does not increase the LIMITS OF INSURANCE stated in the Declarations.

2. **EXCLUSIONS**

    a.  With regard only to the coverage provided by this endorsement, SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. is deleted and replaced by the following:

        f.  Any loss, cost or expense arising out of any:

            (1) request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

            (2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

    b.  The following exclusion is added under SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:

        o.  This coverage does not apply to "overspray" resulting from aerial application or dispersal of "pollutants".

    All other policy exclusions apply.

3. **DEDUCTIBLE**

    Any deductible provision of the policy which is applicable to Property Damage Liability coverage applies to this coverage extension.

4. **DEFINITIONS**

    The following definitions apply in addition to those in the policy.

    "Overspray" means spray, from a device specifically designed for spray application or dispersal, that goes beyond the entire area of intended application or dispersal.

    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

CG 00 01 11 88

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I—COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**

   This insurance does not apply to:

   a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement.

   c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Copyright, Insurance Services Office, Inc., 1982, 1988

e. "Bodily Injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section V.8.).

Copyright, Insurance Services Office, Inc., 1982, 1988

h. "Bodily injury" or "property damage" arising out of:

   (1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   (2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. "Property damage" to:

   (1) Property you own, rent or occupy;

   (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

   (3) Property loaned to you;

   (4) Personal property in the care, custody or control of the insured;

   (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

   Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

   Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

   Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

   This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   (1) "Your product";

   (2) "Your work"; or

   (3) "Impaired property";

   if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

   Exclusions c. through n. do not apply to damage by fire to premises rented to you. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless ex-

Copyright, Insurance Services Office, Inc., 1982, 1988

plicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

b. This insurance applies to:

   (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

   (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

   but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

   (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity;

   (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

   (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

   (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   (2) The failure of goods, products or services to conform with advertised quality or performance;

   (3) The wrong description of the price of goods, products or services; or

   (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an employee of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefit law or similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS—COVERAGES A AND B**

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Li-

Copyright, Insurance Services Office, Inc., 1982, 1988

Agency Code 12-0204-00

ability Coverage applies. We do not have to furnish these bonds.

3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5.  All costs taxed against the insured in the "suit".

6.  Prejudgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

### SECTION II—WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  An organization other than a partnership or joint venture, you are insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    a.  Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is an insured for:

        (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such "bodily injury" or "personal injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

Policy Number 884612-20393748

        (2) "Bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

        (3) "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members (if you are a partnership or joint venture).

    b.  Any person (other than your employee), or any organization while acting as your real estate manager.

    c.  Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

    d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    a.  "Bodily injury" to a co-employee of the person driving the equipment; or

    b.  "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.  Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.  Coverage B does not apply to "personal injury" or "advertising injury" arising out of an

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds,

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises rented to you arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the

policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this

Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V—DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any one time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

(1) The injury or damage arises out of:

   (a) Goods or products made or sold by you in the territory described in a. above; or

   (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

6. "Insured contract" means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality) in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

   a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and af-

Copyright, Insurance Services Office, Inc., 1982, 1988

Agency Code 12-0204-00

fecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

d. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

7. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

8. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise and lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing;

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

10. "Personal injury" means, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed

to occur at the time of the "occurrence" that caused it.

13. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

14. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Agency Code 12-0204-00

Policy Number 884612-20393748

55029 (7-87)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABSOLUTE ASBESTOS EXCLUSION ENDORSEMENT

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

No coverage is provided by this policy for any claim, suit, action or proceeding against the insured arising out of the discharge, dispersal, release, escape or inhalation of any asbestos related particle, dust, irritant, contaminant, pollutant, toxic element or material.

55050 (7-87)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## REINSTATEMENT OF THE GENERAL AGGREGATE LIMIT

It is agreed:

The following is added to SECTION III - LIMITS OF INSURANCE:

If the General Aggregate limit is exhausted, as a result of losses occurring during the policy period because of payment of judgments or settlements, we will reinstate that aggregate limit for losses occurring during the same policy period. We will reinstate such limit only once for each policy period. Further, our liability:

1.   with respect to any one occurrence, shall never exceed the aggregate limit; or

2.   with respect to all occurrences during the policy period, shall never exceed two times the aggregate limit.

55084 (7-87)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MOTOR VEHICLE LAWS

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE PART.

It is agreed the following is added to COMMERCIAL GENERAL LIABILITY CONDITIONS:

We will provide coverage:

1.   up to the minimum required limits; and
2.   subject to all the terms and conditions of the policy;

to comply with any motor vehicle insurance law to the extent such law applies to the "mobile equipment" covered by this coverage part.

All other terms and conditions of the policy apply.

55069 (1-88)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## CONTRACTUAL COVERAGE AMENDATORY ENDORSEMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM.**

It is agreed:

Under Section I - COVERAGE A, Item 2 Exclusions:

Exclusion b. is deleted and replaced by the following:

b.   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)   Assumed in a contract or agreement that is an "insured contract". However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

(2)   That the insured would have in the absence of the contract or agreement.

All other terms and conditions of the policy apply.

Agency Code 12-0204-00    Policy Number 884612-20393748

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**  SS118 (5-91)

## POLLUTION EXCLUSION ENDORSEMENT
## PERSONAL INJURY LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Under SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. EXCLUSIONS, exclusion c. is added:

c.  (1)  "Personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)  if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "personal injury" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing from, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other policy terms and conditions apply.

Includes copyrighted material of Insurance Services
Office, Inc., with its permission
Copyright, Insurance Services Office, 1982, 1988

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage:"

       (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

       (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United State of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

       (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

       (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

       (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

    "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

IL 00 21 11 85        Copyright, Insurance Services Office, Inc., 1983, 1984        Page 1 of 2

Agency Code 12-0204-00

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such

Policy Number 884612-20393748

material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

IL 00 21 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984          Page 2 of 2

# COMMON POLICY CONDITIONS

IL 00 17 11 85

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATIONS OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, 1982, 1983

Agency Code 12-0204-00

Policy Number 884612-20393748

## NOTICE TO POLICYHOLDER

54149 (8-91)

Dear Policyholder:

RE: TENTATIVE COMMERCIAL PROPERTY RATE

A tentative commercial property rate was used to develop the Commercial Property premium for your policy. A property rate, developed by the Insurance Services Office (ISO) in your state, is currently not available for your commercial property.

We have requested a commercial property rate which will be applied to your policy. This adjustment may increase or decrease your premium from the current estimated premium.

The new commercial property rate will be applied as of the inception of the current policy term or the date the property was added to the policy. Please refer to Tentative Rate, Form CP9993.

If you have any questions about tentative rates, please contact your Auto-Owners agent.

AUTO-OWNERS INSURANCE COMPANY

Agency Code 12-0204-00    Policy Number 884612-20393748

## AVAILABILITY OF RISK MANAGEMENT PLAN - FLORIDA    55081 (8-88)

The Florida Tort Reform and Insurance Act of 1986 requires insurance companies to make available to commercial casualty and commercial property policyholders guidelines for risk management plans.

Risk management guidelines include the following:

A.  Safety measures, including, as applicable, the following areas:

1.  Accidental occurrences;
2.  Fire hazards and fire prevention and detection;
3.  Liability for acts from the course of business;
4.  Slip and fall hazards; and
5.  Product injury.

B.  Training to insureds in safety management techniques.

C.  Safety management counseling services.

Risk Management Plan guidelines are available at your request.  If you desire this service, please contact your agent for assistance in completing the request.

Agency Code 12-0204-00

Policy Number 384612-20393748

_____

Florida

59248 (10-96)

**POLICYHOLDER INFORMATION AND ASSISTANCE**

We are here to serve you and as our policyholder your satisfaction is very important to us. Should you have any questions or a complaint regarding your policy that cannot be resolved by your agent, you may contact us at the following telephone numbers.

If you reside in the panhandle area of Florida, you may contact our Montgomery, Alabama Branch Office for information and assistance by calling 205-279-0323. All other Florida residents should contact our Lakeland, Florida Branch Office for information and assistance by calling 941-687-4505.

Auto-Owners Insurance Company
Owners Insurance Company
Southern-Owners Insurance Company

**Auto-Owners**      Page  1                    55039 (11-87)

                                                  Issued  08-28-1998

INSURANCE COMPANY                     TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC               Renewal Effective 10-28-1998
      12-0204-00
INSURED  B K CYPRESS LOG HOMES INC           POLICY NUMBER  884612-20393748-98

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

| | | |
|---|---|---|
| | CB | **POLICY TERM** |
| | | 12:01 a.m.  12:01 a.m. |
| | | 10-28-1998 to 10-28-1999 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:  Log Home Sales

ENTITY:  Corporation

PROGRAM: Mercantile

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S).| PREMIUM |
|---|---|
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $2,379.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 5,116.00 |
| COMMERCIAL INLAND MARINE COVERAGE | 1,602.00 |
| SURTAX | 9.08 |
| FLORIDA EMERGENCY TRUST FUND SURCHARGE | 4.00 |
| TOTAL | $9,110.08 |

FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
  55000  (01-87)    IL0017 (11-85)    55056  (07-87)

Countersigned By:  _____

**Auto-Owners**

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Page   1

54104 (07-87)
Issued   08-28-1998
TAILORED PROTECTION POLICY DECLARATIONS

Renewal Effective 10-28-1998

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-98

ADDRESS PO BOX 191

BRONSON, FL  32621-0191

CB

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 10-28-1998 to 10-28-1999 | |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMERCIAL PROPERTY COVERAGE

### COVERAGES PROVIDED

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
INSURANCE IS SHOWN.

---

### LOCATION 001

ADDITIONAL FORMS THIS LOCATION:  None

LOC 001    BLDG 001 609 Gilbert Street
Bronson, FL  32621

OCCUPIED AS:  Log Home Sales

COVERAGE: Building                          Limit of Insurance    $175,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 90% | $100 | 0.451 | $789.00 |
| Basic Group II | 90% | 100 | 0.211 | 369.00 |
| Special | 90% | 100 | 0.073 | 128.00 |
| Theft | 90% | 100 | | Included |

OPTIONAL COVERAGE:

Replacement Cost

COVERAGE: Pers Prop-Ofc                     Limit of Insurance    $90,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 90% | $100 | 0.598 | $558.00 |
| Basic Group II | 90% | 100 | 0.212 | 191.00 |
| Special | 90% | 100 | 0.128 | 115.00 |
| Special Including Theft | 90% | 100 | 0.277 | 249.00 |

OPTIONAL COVERAGE:

Replacement Cost

ADDITIONAL FORMS THIS BUILDING:  CP1218 (10-91)  55081  (08-88)  IL0003 (11-85)
IL0255 (07-94)  IL0175 (09-93)  59246  (04-98)  CP0090 (07-88)  CP0125 (10-90)
CP0010 (10-91)  CP1030 (10-91)

SECURED INTERESTED PARTIES:  See Attached Schedule

### RATING INFORMATION

Territory:  385
Program:  Mercantile
Class Rate - Building:    0.465
Class Code:    0702

County:  Levy
Construction:  Frame
Protection Class:    07
Class Rate - Pers Prop-Ofc    0.617

LOCATION 001    PREMIUM               $2,379.00

***Auto-Owners***    Page   2                    54104 (07-87)
                                                  Issued  08-28-1998
INSURANCE COMPANY                     TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC            Renewal Effective 10-28-1998
        12-0204-00                      POLICY NUMBER   884612-20393748-98
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                    CB  |    POLICY TERM
                                           | 12:01 a.m.   12:01 a.m.
         BRONSON, FL  32621-0191           | 10-28-1998 to 10-28-1999

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                        COMMERCIAL PROPERTY COVERAGE
ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None
RATING INFORMATION



ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None
RATING INFORMATION



ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None
RATING INFORMATION



ADDITIONAL FORMS THIS BUILDING:  CP9993 (10-90)


SECURED INTERESTED PARTIES:  None
RATING INFORMATION

*Auto-Owners*                    Page   4                    59187 (07-87)
                                                           Issued  08-28-1998
INSURANCE COMPANY                            TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                     Renewal Effective 10-28-1998
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                                POLICY NUMBER  884612-20393748-98
INSURED  B K CYPRESS LOG HOMES INC

                                            CB  |      POLICY TERM
ADDRESS  PO BOX 191                             |  12:01 a.m.   12:01 a.m.
                                                |  10-28-1998 to 10-28-1999
        BRONSON, FL  32621-0191

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

**SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES**

Applies to Loc/Bldg(s):
001/001
 AT&T C/O LEASING INS AGENCY
 PO BOX 96064
 BELLEVUE, WA  90880
 Interest: Loss Payable

Applies to Loc/Bldg(s):
001/001
 AT & T CREDIT CORPORATION
 XLEASE INS AGENCY SERVICES
 PO BOX 96064
 ACCT #1650E02412700010
 BELLEVUE, WA  98009

 Interest: Loss Payable

**Auto-Owners**

Page   1

55040 (11/87)
Issued  08-28-1998
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1998

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00

POLICY NUMBER  884612-20393748-98

INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

| CB | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m. |
| | 10-28-1998 to 10-28-1999 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

## COMMERCIAL GENERAL LIABILITY COVERAGE

LIMITS OF INSURANCE
General Aggregate Limit                              $1,000,000
   (Other Than Products-Completed Operations)
Products-Completed Operations Aggregate Limit         1,000,000
Personal And Advertising Injury Limit                 1,000,000
Each Occurrence Limit                                 1,000,000
Fire Damage Limit                                        50,000 Any One Fire
Medical Expense Limit                                     5,000 Any One Person

"General Aggregate Limit" shown above, is reinstated once per policy period at no
additional charge, in accordance with form 55050.

AUDIT TYPE: Annual Audit

FORMS THAT APPLY TO LIABILITY: IL0021 (11-85)  55081  (08-88)  55029  (07-87)
CG0001 (11-88)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG0220 (07-92)  55118  (08-91)  CG2147 (09-89)  55137  (06-92)
55146  (07-96)  55157  (07-96)  55183  (11-95)  55181  (11-95)  59246  (04-98)

LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 001  BLDG 001 609 Gilbert Street
                 Bronson, FL  32621

TERRITORY:  006    COUNTY:  Levy

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| CODE 12362 Distributors - No Food Or Drink Noc | Prem/Op Prod/Comp Op | Gross Sales 541,772 541,772 | Each 1000 .173 2.136 | $94.00 $1,157.00 |
| CODE 59985 Wood Products Mfg. Noc | Prem/Op Prod/Comp Op | Gross Sales 1,200,000 1,200,000 | Each 1000 1.105 2.116 | $1,326.00 $2,539.00 |
| CODE 91340 Carpentry - Construction Of Residential Property Not Exceeding Three Stories In Height | Prem/Op Prod/Comp Op | Payroll If Any If Any | Each 1000 | |
| CODE 49950 Additional Interests Designated Per/Organization C Mountain Creek Log | Prem/Op | If Any | .017 | $0.00 |

**Auto-Owners**                    Page    2                     55040 (11/87)
                                                                Issued  08-28-1998
INSURANCE COMPANY                              TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                            Renewal Effective 10-28-1998
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                              POLICY NUMBER  884612-20393748-98
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                            CB  |        POLICY TERM
                                                   |  12:01 a.m.    12:01 a.m.
        BRONSON, FL  32621-0191                    |  10-28-1998 to 10-28-1999

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                        COMMERCIAL GENERAL LIABILITY COVERAGE

Lessor Of Leased Equipment          Prem/Op      If Any                        $0.00
Highland Tractor Co


                        LOCATION  001  PREMIUM                  $5,116.80

# *Auto-Owners*

Page   1

16198 (07-87)
Issued  08-28-1998
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-1998

AGENCY  SCARBOROUGH CO INSURANCE INC
  12-0204-00
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-98

ADDRESS PO BOX 191

BRONSON, FL  32621-0191

| CB | POLICY TERM |
|----|-------------|
|    | 12:01 a.m.   12:01 a.m. |
|    | 10-28-1998 to 10-28-1999 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMERCIAL INLAND MARINE COVERAGE

COINSURANCE CONTRACT - The rate charged in this policy is based upon the use of the
coinsurance clause attached to this policy, with the consent of the insured.

### COVERAGES PROVIDED

Insurance at the described premises applies only for which a limit of insurance is shown.

FORMS THAT APPLY TO INLAND MARINE:  16080  (08-86)  55081  (08-88)  16241  (05-94)
  16071  (02-86)  59246  (04-98)

### LOCATION OF PREMISES

LOC 001 BLDG 001 609 Gilbert Street
  Bronson, FL  32621

| COVERAGE | LIMIT | DED | RATE | PREMIUM |
|----------|-------|-----|------|---------|
| OTHER |  |  |  |  |
| 8130 Contractors Equipment-3 | $43,400 | $100 | 1.921 | $1,602.00 |

LOCATION  001  PREMIUM                    $1,602.00

**Auto-Owners**                 Page   1                    55056 (07-87)
                                                          Issued  08-28-1998
INSURANCE COMPANY                        TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                              Renewal Effective 10-28-1998
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                            POLICY NUMBER  884612-20393748-98
INSURED  B K CYPRESS LOG HOMES INC

                                    CB  |        POLICY TERM
ADDRESS PO BOX 191                      | 12:01 a.m.   12:01 a.m.
                                        | 10-28-1998 to 10-28-1999
        BRONSON, FL   32621-0191

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                          SUPPLEMENTAL DECLARATIONS

COMPLETE NAMED INSURED:

JIM & ADA MARIE KEETON
DBA B K CYPRESS LOG HOMES INC
& LOGSMITHS OF AMERICA INC


16071 CONTRACTORS EQUIPMENT FORM
      COLLISION CLASS 3

   1. 1996 JOHN DEERE FORKLIFT #482C #823463          $43,400


                                      TOTAL:   $43,400


LOSS PAYEE & ADDITIONAL INSURED
HIGHLAND TRACTOR CO
PO BOX 1800
OCALA, FL 34478
APPLIES TO ITEM #1


*

Agency Code 12-0204-80                    Policy Number 864612-28393748

CP 12 18 10 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUILDERS' RISK COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

## SCHEDULE

| Provisions Applicable | | |
|---|---|---|
| Loss Payable | Lender's Loss Payable | Contract Of Sale |

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) |
|---|---|---|---|
| | | | |

A. When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**C. LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a. Warehouse receipts;

   b. A contract for deed;

   c. Bills of lading;

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990          Page 1 of 2

*Auto-Owners*                    Page   1                    55039 (11-87)
                                                              Issued  10-28-1999
INSURANCE COMPANY                            TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                      Renewal Effective 10-28-1999
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                                 POLICY NUMBER  884612-20393748-99
INSURED B K CYPRESS LOG HOMES INC

ADDRESS PO BOX 191                          CB  |       POLICY TERM
                                                |   12:01 a.m.    12:01 a.m.
        BRONSON, FL  32621-0191                 |  10-28-1999 to 10-28-2000

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                          COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:  Log Home Sales

ENTITY:  Corporation

PROGRAM: Mercantile

---

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | PREMIUM |
|---|---|
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $2,379.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 4,987.00 |
| COMMERCIAL INLAND MARINE COVERAGE | 864.00 |
| SURTAX | 8.21 |
| FLORIDA EMERGENCY TRUST FUND SURCHARGE | 4.00 |
| TOTAL | $8,242.21 |

FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
  55000  (01-87)   IL0017 (11-85)   55056  (07-87)

Countersigned By:  _____

*Auto-Owners*                    Page   1                      54104 (07-87)
                                                                Issued  10-28-1999
                                                   TAILORED PROTECTION POLICY DECLARATIONS
INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999
                                                       Renewal Effective 10-28-1999
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                                  POLICY NUMBER  884612-20393748-99
INSURED  B K CYPRESS LOG HOMES INC

                                                   CB  | POLICY TERM                 |
ADDRESS  PO BOX 191                                    | 12:01 a.m.    12:01 a.m.    |
                                                       | 10-28-1999  to  10-28-2000  |
         BRONSON, FL  32621-0191

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

                              COMMERCIAL PROPERTY COVERAGE

COVERAGES PROVIDED

    INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
    INSURANCE IS SHOWN.

                                    LOCATION 001

ADDITIONAL FORMS THIS LOCATION:  None

LOC 001    BLDG 001 609 Gilbert Street
                    Bronson, FL  32621

OCCUPIED AS:  Log Home Sales

COVERAGE: Building                         Limit of Insurance     $175,000

    CAUSES OF LOSS          COINSURANCE   DEDUCTIBLE      RATE       PREMIUM
    Basic Group I             90%           $100         0.451       $789.00
    Basic Group II            90%            100         0.211        369.00
    Special                   90%            100         0.073        128.00
    Theft                     90%            100                     Included

OPTIONAL COVERAGE:

    Replacement Cost

COVERAGE: Pers Prop-Ofc                    Limit of Insurance     $90,000

    CAUSES OF LOSS          COINSURANCE   DEDUCTIBLE      RATE       PREMIUM
    Basic Group I             90%           $100         0.598       $538.00
    Basic Group II            90%            100         0.212        191.00
    Special                   90%            100         0.128        115.00
    Special Including Theft   90%            100         0.277        249.00

OPTIONAL COVERAGE:

    Replacement Cost

ADDITIONAL FORMS THIS BUILDING:  CP1218 (10-91)  55081  (08-88)  IL0003 (11-85)
    IL0255 (07-94)  IL0175 (09-93)  59246  (04-98)  CP0090 (07-88)  CP0125 (10-90)
    CP0010 (10-91)  CP1030 (10-91)

SECURED INTERESTED PARTIES:  See Attached Schedule

RATING INFORMATION

    Territory:  385                        County:  Levy
    Program:  Mercantile                   Construction:  Frame
    Class Rate - Building:    0.465        Protection Class:   07
    Class Code:   0702                     Class Rate - Pers Prop-Ofc   0.617


                          LOCATION 001   PREMIUM              $2,379.00

**Auto-Owners**                    Page    2                59187 (07-87)
                                                           Issued  10-28-1999
                                        TAILORED PROTECTION POLICY DECLARATIONS
INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                 Renewal Effective 10-28-1999
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                          POLICY NUMBER  884612-20393748-99
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                  CB  |        POLICY TERM
                                         |  12:01 a.m.    12:01 a.m.
       BRONSON, FL  32621-0191           | 10-28-1999 to 10-28-2000

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES

Applies to Loc/Bldg(s):
001/001
 AT&T C/O LEASING INS AGENCY
 PO BOX 96064
 BELLEVUE, WA  90880
 Interest: Loss Payable

Applies to Loc/Bldg(s):
001/001
 AT & T CREDIT CORPORATION
 %LEASE INS AGENCY SERVICES
 PO BOX 96064
 ACCT #1650E02412700010
 BELLEVUE, WA  98009

 Interest: Loss Payable

**Auto-Owners**                     Page   1                    55040 (11/87)
                                                                      Issued  10-28-1999
INSURANCE COMPANY                                      TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                               Renewal Effective 10-28-1999
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00                                        POLICY NUMBER  884612-20393748-99
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                                    CB  |        POLICY TERM
                                                           |  12:01 a.m.   12:01 a.m.
        BRONSON, FL  32621-0191                            |  10-28-1999 to 10-28-2000

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

**COMMERCIAL GENERAL LIABILITY COVERAGE**

LIMITS OF INSURANCE
    General Aggregate Limit                              $1,000,000
        (Other Than Products-Completed Operations)
    Products-Completed Operations Aggregate Limit         1,000,000
    Personal And Advertising Injury Limit                 1,000,000
    Each Occurrence Limit                                 1,000,000
    Fire Damage Limit                                        50,000 Any One Fire
    Medical Expense Limit                                    5,000 Any One Person

"General Aggregate Limit" shown above, is reinstated once per policy period at no
additional charge, in accordance with form 55050.

    AUDIT TYPE: Annual Audit

FORMS THAT APPLY TO LIABILITY:- IL0021 (11-85)  55081  (08-88)  55029  (07-87)
CG0001 (11-88)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG0220 (07-92)  55118  (08-91)  CG2147 (09-89)  55137  (06-92)
55146  (07-96)  55157  (07-96)  55183  (11-95)  55181  (11-95)  59246  (04-98)


LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 001  BLDG 001 609 Gilbert Street
                  Bronson, FL 32621

TERRITORY:  006   COUNTY:  Levy

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| CODE 12362<br>Distributors - No Food Or Drink<br>Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>541,772<br>541,772 | Each 1000<br>.168<br>2.082 | $91.00<br>$1,128.00 |
| CODE 59985<br>Wood Products Mfg. Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>1,200,000<br>1,200,000 | Each 1000<br>1.077<br>2.063 | $1,292.00<br>$2,476.00 |
| CODE 91340<br>Carpentry - Construction Of<br>Residential Property Not Exceeding<br>Three Stories In Height | Prem/Op<br>Prod/Comp Op | Payroll<br>If Any<br>If Any | Each 1000 | |
| CODE 49950<br>Additional Interests<br>Designated Per/Organization C<br>Mountain Creek Log | Prem/Op | If Any | .016 | $0.00 |

## *Auto-Owners*

| | Page 2 | 55040 (11/87)<br>Issued 10-28-1999 |
|---|---|---|

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY SCARBOROUGH CO INSURANCE INC
12-0204-00

INSURED B K CYPRESS LOG HOMES INC

ADDRESS PO BOX 191

BRONSON, FL  32621-0191

TAILORED PROTECTION POLICY DECLARATIONS

Renewal Effective 10-28-1999

POLICY NUMBER  884612-20393748-99

| CB | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m. |
| | 10-28-1999 <sup>to</sup> 10-28-2000 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

### COMMERCIAL GENERAL LIABILITY COVERAGE

Lessor Of Leased Equipment        Prem/Op        If Any                           $0.00
Highland Tractor Co


                                  LOCATION  001  PREMIUM                      $4,987.00


LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 002  BLDG 001 6751 Ne Cr 337
                   Bronson, FL  32621

TERRITORY:  006    COUNTY:  Levy

| Classification | Subline | Premium<br>Basis | Rates | Premium |
|---|---|---|---|---|
| **CODE** 59985<br>Wood Products Mfg. Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>If Any<br>If Any | Each 1000 | |


                                  LOCATION  002  PREMIUM                         $0.00

*Auto-Owners*          Page   1                          16198 (07-87)
                                                        Issued  10-28-1999
INSURANCE COMPANY                        TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC              Renewal Effective 10-28-1999
        12-0204-00
INSURED  B K CYPRESS LOG HOMES INC               POLICY NUMBER  884612-20393748-99

ADDRESS  PO BOX 191                      CB  |     POLICY TERM
                                             | 12:01 a.m.   12:01 a.m.
         BRONSON, FL  32621-0191             | 10-28-1999 to 10-28-2000

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                    COMMERCIAL INLAND MARINE COVERAGE
COINSURANCE CONTRACT - The rate charged in this policy is based upon the use of the
   coinsurance clause attached to this policy, with the consent of the insured.

COVERAGES PROVIDED

   Insurance at the described premises applies only for which a limit of insurance is shown.

FORMS THAT APPLY TO INLAND MARINE:  16080  (08-86)  55081  (08-88)  16241  (05-94)
   16071  (02-86)  59246  (04-98)


LOCATION OF PREMISES

LOC 001 BLDG 001 609 Gilbert Street
              Bronson, FL  32621

| COVERAGE | LIMIT | DED | RATE | PREMIUM |
|----------|-------|-----|------|---------|
| OTHER | | | | |
| 8130 Contractors Equipment-3 | $45,000 | $100 | 1.920 | $864.00 |

                       LOCATION  001  PREMIUM                    $864.00

## *Auto-Owners*

Page   1

55056 (07-87)
Issued  10-28-1999
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY SCARBOROUGH CO INSURANCE INC
12-0204-00
INSURED B K CYPRESS LOG HOMES INC

ADDRESS PO BOX 191

BRONSON, FL  32621-0191

Renewal Effective 10-28-1999

POLICY NUMBER  884612-20393748-99

CB

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 10-28-1999 to | 10-28-2000 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

SUPPLEMENTAL DECLARATIONS

COMPLETE NAMED INSURED:

JIM & ADA MARIE KEETON
DBA B K CYPRESS LOG HOMES INC
& LOGSMITHS OF AMERICA INC

Agency Code 12-0204-00                                    Policy Number 884612-20393748

CP 12 18 10 91

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| Provisions Applicable | | |
|---|---|---|
| Loss Payable | Lender's Loss Payable | Contract Of Sale |

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) |
|---|---|---|---|
| | | | |

A. When this endorsement is attached to the STAND-ARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**B. LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**C. LENDER'S LOSS PAYABLE**

1. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

    a. Warehouse receipts;

    b. A contract for deed;

    c. Bills of lading;

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990                    Page 1 of 2

## *Auto-Owners*

Page   1

55039 (11-87)
Issued  09-08-2000
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-2000

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00        UNIT 55

POLICY NUMBER  884612-20393748-00

INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

| Company<br>Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m. |
| | 10-28-2000 $^{to}$ 10-28-2001 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

### COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:   Log Home Sales

ENTITY:  Corporation

PROGRAM: Mercantile

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S): | PREMIUM |
|---|---|
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $2,379.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 5,167.00 |
| COMMERCIAL INLAND MARINE COVERAGE | 890.00 |
| SURTAX | 8.42 |
| FLORIDA EMERGENCY TRUST FUND SURCHARGE | 4.00 |
| TOTAL | $8,448.42 |

FORMS THAT APPLY TO ALL COVERAGE PARTS SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
55000  (01-87)   IL0017 (11-85)   55056  (07-87)

Countersigned By:  _____

*Auto-Owners*                    Page   1                    54104 (07-87)
                                                             Issued  09-08-2000
INSURANCE COMPANY                                TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                                        Renewal Effective 10-28-2000
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00      UNIT 55                      POLICY NUMBER  884612-20393748-00
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                        | Company |        POLICY TERM        |
                                           |  Bill   | 12:01 a.m.   12:01 a.m.  |
         BRONSON, FL  32621-0191           |         | 10-28-2000 to 10-28-2001 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                          COMMERCIAL PROPERTY COVERAGE

COVERAGES PROVIDED

  INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
  INSURANCE IS SHOWN.

                              LOCATION 001

ADDITIONAL FORMS THIS LOCATION:  None

LOC 001    BLDG 001 609 Gilbert Street
                    Bronson, FL  32621

OCCUPIED AS:  Log Home Sales

COVERAGE: Building                       Limit of Insurance      $175,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE  | PREMIUM  |
|----------------|-------------|------------|-------|----------|
| Basic Group I  | 90%         | $100       | 0.451 | $789.00  |
| Basic Group II | 90%         | 100        | 0.211 | 369.00   |
| Special        | 90%         | 100        | 0.073 | 128.00   |
| Theft          | 90%         | 100        |       | Included |

OPTIONAL COVERAGE:

  Replacement Cost

              Inflation Guard (Percentage)
         Building
         1.011

COVERAGE: Pers Prop-Ofc                  Limit of Insurance      $90,000

| CAUSES OF LOSS          | COINSURANCE | DEDUCTIBLE | RATE  | PREMIUM |
|-------------------------|-------------|------------|-------|---------|
| Basic Group I           | 90%         | $100       | 0.598 | $558.00 |
| Basic Group II          | 90%         | 130        | 0.212 | 191.00  |
| Special                 | 90%         | 100        | 0.128 | 115.00  |
| Special Including Theft | 90%         | 100        | 0.277 | 249.00  |

OPTIONAL COVERAGE:

  Replacement Cost

ADDITIONAL FORMS THIS BUILDING:  CP1218 (10-91)  55081  (08-88)  IL0003 (11-85)
  IL0255 (07-94)  IL0175 (09-93)  59246  (05-00)  CP0090 (07-88)  CP0125 (10-90)
  CP0010 (10-91)  CP1030 (10-91)

SECURED INTERESTED PARTIES:  See Attached Schedule

RATING INFORMATION

  Territory:  385                     County:  Levy
  Program:  Mercantile                Construction:  Frame
  Class Rate - Building:   0.465      Protection Class:   07
  Class Code:   0702                  Class Rate - Pers Prop-Ofc   0.617

***Auto-Owners***                 Page   2                    54104 (07-87)
                                                              Issued  09-08-2000
INSURANCE COMPANY                                 TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC                       Renewal Effective 10-28-2000
        12-0204-00        UNIT 55
INSURED  B K CYPRESS LOG HOMES INC                   POLICY NUMBER  884612-20393748-00

ADDRESS  PO BOX 191                          Company  |     POLICY TERM
                                             Bill     | 12:01 a.m.   12:01 a.m.
         BRONSON, FL  32621-0191                      | 10-28-2000 to 10-28-2001

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                          **COMMERCIAL PROPERTY COVERAGE**


                         LOCATION 001   PREMIUM            $2,379.00

**_Auto-Owners_**   Page   3                           59187 (07-87)
                                                    Issued  09-08-2000
INSURANCE COMPANY                      TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                         Renewal Effective 10-28-2000
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00        UNIT 55          POLICY NUMBER  884612-20393748-00
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS PO BOX 191                    Company  | POLICY TERM
                                      Bill     | 12:01 a.m.   12:01 a.m.
       BRONSON, FL  32621-0191                 | 10-28-2000 to 10-28-2001

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES

Applies to Loc/Bldg(s):
001/001
  AT&T C/O LEASING INS AGENCY
  PO BOX 96064
  BELLEVUE, WA  90830
  Interest:  Loss Payable


Applies to Loc/Bldg(s):
001/001
  AT & T CREDIT CORPORATION
  %LEASE INS AGENCY SERVICES
  PO BOX 96064
  ACCT #1650E02412700010
  BELLEVUE, WA  98009

  Interest:Loss Payable


Applies to Loc/Bldg(s):
001/001
  DRUMMOND COMMUNITY BANK
  PO DRAWER 1039
  CHIEFLAND, FL  32644-1039
  Interest:  Mortgagee

# *Auto-Owners*

Page    1

55040 (11/87)
Issued  09-08-2000
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-2000

AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00        UNIT 55
INSURED B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-00

ADDRESS PO BOX 191

        BRONSON, FL  32621-0191

| Company Bill | POLICY TERM |  |
|---|---|---|
|  | 12:01 a.m. | 12:01 a.m. |
|  | 10-28-2000 to | 10-28-2001 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this Declarations and attachments to your policy. If you have any questions, please consult with your agent.

### COMMERCIAL GENERAL LIABILITY COVERAGE

LIMITS OF INSURANCE
General Aggregate Limit                                  $1,000,000
   (Other Than Products-Completed Operations)
Products-Completed Operations Aggregate Limit             1,000,000
Personal And Advertising Injury Limit                     1,000,000
Each Occurrence Limit                                     1,000,000
Fire Damage Limit                                            50,000 Any One Fire
Medical Expense Limit                                        5,000 Any One Person

"General Aggregate Limit" shown above, is reinstated once per policy period at no additional charge, in accordance with form 55050.

AUDIT TYPE: Annual Audit

FORMS THAT APPLY TO LIABILITY: IL0021 (11-85)  55081  (08-88)  55029  (07-87)
CG0001 (11-88)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG0220 (07-92)  55118  (08-91)  CG2147 (09-89)  55137  (06-92)
55146  (07-96)  55157  (07-96)  55183  (11-95)  55181  (11-95)  59246  (05-00)

LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 001  BLDG 001 609 Gilbert Street
              Bronson, FL  32621

TERRITORY:  006   COUNTY:  Levy

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| CODE 12362<br>Distributors - No Food Or Drink Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>541,772<br>541,772 | Each 1000<br>.168<br>2.186 | $91.00<br>$1,184.00 |
| CODE 59985<br>Wood Products Mfg. Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>1,200,000<br>1,200,000 | Each 1000<br>1.077<br>2.167 | $1,292.00<br>$2,600.00 |
| CODE 91340<br>Carpentry - Construction Of Residential Property Not Exceeding Three Stories In Haight | Prem/Op<br>Prod/Comp Op | Payroll<br>If Any<br>If Any | Each 1000 | |
| CODE 49950<br>Additional Interests Designated Per/Organization C Mountain Creek Log | Prem/Op | If Any | .016 | $0.00 |

*Auto-Owners*                     Page   2                    55040 (11/87)
                                                                Issued  09-08-2000
INSURANCE COMPANY                              TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999
                                                       Renewal Effective 10-28-2000
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00        UNIT 55                  POLICY NUMBER  884612-20393748-00
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                    Company  |        POLICY TERM
                                       Bill     |  12:01 a.m,   12:01 a.m.
        BRONSON, FL  32621-0191                 |  10-28-2000 to 10-28-2001

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

─────────────────────── COMMERCIAL GENERAL LIABILITY COVERAGE ───────────────────────

Log Home Living Inst              Prem/Op         If Any              .016           $0.00


Lessor Of Leased Equipment        Prem/Op         If Any                             $0.00
Highland Tractor Co



                                   LOCATION  001  PREMIUM                        $5,167.00

LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 002  BLDG 001 6751 Ne Cr 337
              Bronson, FL  32621

TERRITORY:  006   COUNTY:  Levy


                                                 Premium
Classification                     Subline        Basis          Rates        Premium

                   CODE 59985    Prem/Op      Gross Sales    Each 1000
Wood Products Mfg. Noc           Prod/Comp Op  If Any
                                               If Any



                                   LOCATION  002  PREMIUM                          $0.00

*Auto-Owners*                          Page   1                          16198 (07-87)
                                                                   Issued  09-08-2000
INSURANCE COMPANY                                        TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC                          Renewal Effective 10-28-2000
        12-0204-00         UNIT 55
INSURED  B K CYPRESS LOG HOMES INC                       POLICY NUMBER  884612-20393748-00

ADDRESS  PO BOX 191                                  Company  |        POLICY TERM
                                                     Bill     |  12:01 a.m.   12:01 a.m.
         BRONSON, FL   32621-0191                             | 10-28-2000 to 10-28-2001

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                         COMMERCIAL INLAND MARINE COVERAGE

COINSURANCE CONTRACT - The rate charged in this policy is based upon the use of the
    coinsurance clause attached to this policy, with the consent of the insured.

COVERAGES PROVIDED

    Insurance at the described premises applies only for which a limit of insurance is shown.

FORMS THAT APPLY TO INLAND MARINE:  16080  (08-86)  55081  (08-88)  16241  (05-94)
    16071  (02-86)  59246  (05-00)


LOCATION OF PREMISES

LOC 001 BLDG 001 609 Gilbert Street
                 Bronson, FL  32621

COVERAGE                                   LIMIT      DED      RATE       PREMIUM
  OTHER
  8130 Contractors Equipment-3            $45,000    $100    1.978       $890.00


                         LOCATION  001  PREMIUM                          $890.00

*Auto-Owners*          Page  1                    55056 (07-87)
                                                  Issued  09-08-2000
INSURANCE COMPANY                    TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

                                            Renewal Effective 10-28-2000
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00      UNIT 55           POLICY NUMBER  884612-20393748-00
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191                   Company │      POLICY TERM
                                       Bill   │ 12:01 a.m.   12:01 a.m.
        BRONSON, FL  32621-0191               │ 10-28-2000 to 10-28-2001

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

                        SUPPLEMENTAL DECLARATIONS

COMPLETE NAMED INSURED:

JIM & ADA MARIE KEETON
DBA B K CYPRESS LOG HOMES INC
& B K CYPRESS INC

Agency Code 12-0204-00

Policy Number 884612-20393748

CP 12 18 10 91

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

| | **Provisions Applicable** | |
|---|---|---|
| Loss | Lender's | Contract |
| Payable | Loss Payable | Of Sale |

| Prem. | Bldg. | Description | Loss Payee |
|---|---|---|---|
| No. | No. | of Property | (Name & Address) |

A. When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

B. **LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990

Page 1 of 3

*Auto-Owners*                    Page   1                          55039 (11-87)
                                                                Issued  08-24-2001
INSURANCE COMPANY                                   TAILORED PROTECTION POLICY DECLARATIONS
6101 ANACAPRI BLVD., LANSING, MI 48917-3999
                                                       Renewal Effective 10-28-2001
AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00        UNIT 55                       POLICY NUMBER  884612-20393748-01
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

         BRONSON, FL  32621-0191

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.   12:01 a.m. |
| | 10-28-2001 to 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMON POLICY INFORMATION

BUSINESS DESCRIPTION:  Log Home Sales

ENTITY:  Corporation

PROGRAM:  Mercantile

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PART(S). | PREMIUM |
|---|---|
| THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
| COMMERCIAL PROPERTY COVERAGE | $2,273.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE | 5,284.00 |
| COMMERCIAL INLAND MARINE COVERAGE | 1,425.00 |
| SURTAX | 8.97 |
| FLORIDA EMERGENCY TRUST FUND SURCHARGE | 4.00 |
| TOTAL | $8,994.97 |

FORMS THAT APPLY TO ALL COVERAGE PART SHOWN ABOVE (EXCEPT GARAGE LIABILITY, DEALER'S
BLANKET, COMMERCIAL AUTOMOBILE, IF APPLICABLE)
 55000  (01-87)   IL0017 (11-85)   55056  (07-87)


A  5% MULTI-POLICY DISCOUNT APPLIES
Countersigned By: _____

**Auto-Owners**

Page   1

54104 (07-87)
Issued 08-24-2001
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-2001

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00      UNIT 55
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-01

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

| Company Bill | POLICY TERM |
|---|---|
|  | 12:01 a.m.     12:01 a.m. |
|  | 10-28-2001 <sup>to</sup> 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

**COMMERCIAL PROPERTY COVERAGE**

**COVERAGES PROVIDED**

INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF
INSURANCE IS SHOWN.

LOCATION 001

ADDITIONAL FORMS THIS LOCATION:  None

LOC 001   BLDG 001 609 Gilbert Street
Bronson, FL  32621

OCCUPIED AS:  Log Home Sales

COVERAGE: Building                    Limit of Insurance      $176,900

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 90% | $100 | 0.428 | $757.00 |
| Basic Group II | 90% | 100 | 0.200 | 354.00 |
| Special | 90% | 100 | 0.070 | 124.00 |
| Theft | 90% | 100 |  | Included |

OPTIONAL COVERAGE:

Replacement Cost

Inflation Guard (Percentage)
Building
1.013

COVERAGE: Pers Prop-Ofc                Limit of Insurance      $90,000

| CAUSES OF LOSS | COINSURANCE | DEDUCTIBLE | RATE | PREMIUM |
|---|---|---|---|---|
| Basic Group I | 90% | $100 | 0.568 | $511.00 |
| Basic Group II | 90% | 100 | 0.201 | 181.00 |
| Special | 90% | 100 | 0.121 | 109.00 |
| Special Including Theft | 90% | 100 | 0.263 | 237.00 |

OPTIONAL COVERAGE:

Replacement Cost

ADDITIONAL FORMS THIS BUILDING:  CP1218 (10-91)  55081  (08-88)  IL0003 (11-85)
IL0255 (07-94)  IL0175 (09-93)  59246  (05-00)  CP0090 (07-88)  CP0125 (10-90)
CP0010 (10-91)  CP1030 (10-91)

SECURED INTERESTED PARTIES:  See Attached Schedule

RATING INFORMATION

Territory:  385                    County:  Levy
Program:  Mercantile              Construction:  Frame
Class Rate - Building:   0.465     PC:   07          Class Code:   0782
                                  Class Rate - Pers Prop-Ofc   0.617

*Auto-Owners*    Page    2

54104 (07-87)
Issued 08-24-2001
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-2001

AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00        UNIT 55
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-01

ADDRESS  PO BOX 191

        BRONSON, FL  32621-0191

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m. |
| | 10-28-2001 to 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMERCIAL PROPERTY COVERAGE

LOCATION 001    PREMIUM                    $2,273.00

## *Auto-Owners*

Page   3

59187 (07-87)
Issued   08-24-2001

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

TAILORED PROTECTION POLICY DECLARATIONS

Renewal Effective 10-28-2001

AGENCY   SCARBOROUGH CO INSURANCE INC
         12-0204-00         UNIT 55
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-01

ADDRESS  PO BOX 191

          BRONSON, FL   32621-0191

| Company Bill | POLICY TERM |
|---|---|
|  | 12:01 a.m.    12:01 a.m. |
|  | 10-28-2001 to 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

SECURED INTERESTED PARTIES AND/OR ADDITIONAL INTERESTED PARTIES

Applies to Loc/Bldg(s):
001/001
 AT&T C/O LEASING INS AGENCY
 PO BOX 96064
 BELLEVUE, WA  90880
 Interest:  Loss Payable


Applies to Loc/Bldg(s):
001/001
 AT & T CREDIT CORPORATION
 %LEASE INS AGENCY SERVICES
 PO BOX 96064
 ACCT #1650E02412700010
 BELLEVUE, WA  98009

 Interest:Loss Payable


Applies to Loc/Bldg(s):
001/001
 DRUMMOND COMMUNITY BANK
 PO DRAWER 1039
 CHIEFLAND, FL   32644-1039
 Interest:  Mortgagee

# *Auto-Owners*

Page  1

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC
12-0204-00       UNIT 55
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

BRONSON, FL  32621-0191

55040 (11/87)
Issued  08-24-2001
TAILORED PROTECTION POLICY DECLARATIONS

Renewal Effective 10-28-2001

POLICY NUMBER  884612-20393748-01

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.    12:01 a.m. |
| | 10-28-2001 to 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

## COMMERCIAL GENERAL LIABILITY COVERAGE

LIMITS OF INSURANCE
General Aggregate Limit                                      $1,000,000
   (Other Than Products-Completed Operations)
Products-Completed Operations Aggregate Limit                 1,000,000
Personal And Advertising Injury Limit                         1,000,000
Each Occurrence Limit                                         1,000,000
Fire Damage Limit                                                50,000 Any One Fire
Medical Expense Limit                                             5,000 Any One Person

"General Aggregate Limit" shown above, is reinstated once per policy period at no
additional charge, in accordance with form 55050.

AUDIT TYPE: Annual Audit

FORMS THAT APPLY TO LIABILITY: IL0021 (11-85)  55081  (08-88)  55029  (07-87)
CG0001 (11-88)  IL0017 (11-85)  55050  (07-87)  55064  (07-87)  CL175  (02-86)
55069  (01-88)  CG0220 (07-92)  55118  (08-91)  CG2147 (09-89)  55137  (06-92)
55146  (07-96)  55157  (07-96)  55183  (11-95)  55181  (11-95)  59246  (05-00)

LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 001  BLDG 001 609 Gilbert Street
              Bronson, FL  32621

TERRITORY:  006    COUNTY:  Levy

| Classification | Subline | Premium Basis | Rates | Premium |
|---|---|---|---|---|
| CODE 12362 | | Gross Sales | Each 1000 | |
| Distributors - No Food Or Drink | Prem/Op | 541,772 | .172 | $93.00 |
| Noc | Prod/Comp Op | 541,772 | 2.235 | $1,211.00 |
| | | | | |
| CODE 59985 | | Gross Sales | Each 1000 | |
| Wood Products Mfg. Noc | Prem/Op | 1,200,000 | 1.101 | $1,321.00 |
| | Prod/Comp Op | 1,200,000 | 2.216 | $2,659.00 |
| | | | | |
| CODE 91340 | | Payroll | Each 1000 | |
| Carpentry - Construction Of | Prem/Op | If Any | | |
| Residential Property Net Exceeding | Prod/Comp Op | If Any | | |
| Three Stories In Height | | | | |
| | | | | |
| CODE 49950 | | | | |
| Additional Interests | | | | |
| Designated Per/Organization C | Prem/Op | If Any | .017 | $0.00 |
| Mountain Creek Log | | | | |

# *Auto-Owners*

Page   2

55040 (11/87)
Issued  08-24-2001

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

TAILORED PROTECTION POLICY DECLARATIONS

Renewal Effective 10-28-2001

AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00       UNIT 55
INSURED  B K CYPRESS LOG HOMES INC

POLICY NUMBER  884612-20393748-01

ADDRESS  PO BOX 191

        BRONSON, FL  32621-0191

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.   12:01 a.m.<br>10-28-2001 to 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

COMMERCIAL GENERAL LIABILITY COVERAGE

| | | | | |
|---|---|---|---|---|
| Log Home Living Inst | Prem/Op | If Any | .017 | $0.00 |
| Lessor Of Leased Equipment<br>Highland Tractor Co | Prem/Op | If Any | | $0.00 |

LOCATION  001  PREMIUM          $5,284.00

LOCATION OF PREMISES YOU OWN, RENT OR OCCUPY

LOC 002  BLDG 001 6751 Ne Cr 337
                  Bronson, FL  32621

TERRITORY:  006   COUNTY:  Levy

| Classification | Subline | Premium<br>Basis | Rates | Premium |
|---|---|---|---|---|
| CODE 59985<br>Wood Products Mfg. Noc | Prem/Op<br>Prod/Comp Op | Gross Sales<br>If Any<br>If Any | Each 1000 | |

LOCATION  002  PREMIUM          $0.00

*Auto-Owners*   ﹀   Page   1

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY  SCARBOROUGH CO INSURANCE INC
        12-0204-00        UNIT 55
INSURED  B K CYPRESS LOG HOMES INC

ADDRESS  PO BOX 191

        BRONSON, FL  32621-0191

16198 (07-87)
Issued  08-24-2001
TAILORED PROTECTION POLICY DECLARATIONS

Renewal Effective 10-28-2001

POLICY NUMBER  884612-20393748-01

| Company Bill | POLICY TERM | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | 10-28-2001 to 10-28-2002 | |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this
Declarations and attachments to your policy. If you have any questions, please consult with your agent.

COMMERCIAL INLAND MARINE COVERAGE

COINSURANCE CONTRACT - The rate charged in this policy is based upon the use of the
coinsurance clause attached to this policy, with the consent of the insured.

COVERAGES PROVIDED

Insurance at the described premises applies only for which a limit of insurance is shown.

FORMS THAT APPLY TO INLAND MARINE:  16079  (05-86)  16080  (08-86)  55081  (08-88)
16241  (05-94)  16071  (02-86)  59246  (05-00)  16083  (02-99)

LOCATION OF PREMISES

LOC 001 BLDG 001 609 Gilbert Street
               Bronson, FL  32621

| COVERAGE | LIMIT | DED | RATE | PREMIUM |
|---|---|---|---|---|
| OTHER | | | | |
| 8130 Contractors Equipment | $45,000 | $100 | 1.918 | $863.00 |
| 8523 Miscellaneous Property | 20,000 | 250 | 2.809 | 562.00 |

LOCATION  001  PREMIUM                    $1,425.00

# *Auto-Owners*

Page   1

55056 (07-87)
Issued   08-24-2001
TAILORED PROTECTION POLICY DECLARATIONS

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Renewal Effective 10-28-2001

AGENCY   SCARBOROUGH CO INSURANCE INC
12-0204-00        UNIT 55

POLICY NUMBER   884612-20393748-01

INSURED   B K CYPRESS LOG HOMES INC

ADDRESS   PO BOX 191

BRONSON, FL   32621-0191

| Company Bill | POLICY TERM |
|---|---|
| | 12:01 a.m.   12:01 a.m. |
| | 10-28-2001 <sup>to</sup> 10-28-2002 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this
Declarations and attachments to your policy.  If you have any questions, please consult with your agent.

SUPPLEMENTAL DECLARATIONS

COMPLETE NAMED INSURED:

    JIM & ADA MARIE KEETON
    DBA B K CYPRESS LOG HOMES INC
    & B K CYPRESS INC

16071   CONTRACTORS EQUIPMENT FORM - ALL RISK
    COLL CLASS 3

  1.   VOLVO FORKLIFT                       $15,000
  2.   KOMATSU FORKLIFT                 30,000

                                 TOTAL   $45,000

16079   MISCELLANEOUS PROPERTY FLOATER - ALL RISK

  1.   TRAVELING EXHIBITS - MODEL KITS OF LOG HOMES     $20,000

                                 TOTAL   $20,000

Agency Code 12-0204-00                                    Policy Number 884612-20393748

CP 12 18 10 91

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

## SCHEDULE

|  | **Provisions Applicable** |  |
|---|---|---|
| Loss | Lender's | Contract |
| Payable | Loss Payable | Of Sale |

| Prem. | Bldg. | Description | Loss Payee |
|---|---|---|---|
| No. | No. | of Property | (Name & Address) |

A. When this endorsement is attached to the STANDARD PROPERTY POLICY CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

B. LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1990        Page 1 of 3

FINAL AUDIT

## *Auto-Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD LANSING MI  48917-3968

POLICY NUMBER 894612 20395748 02
AGENCY BILL

INSURED: B K CYPRESS LOG HOMES INC

    PO BOX 191
    BRONSON            FL 32621-0191

AGENCY:  12-0204-00    MKT TERR: 055
SCARBOROUGH COMPANY INSURANCE INC
PO BOX 147050
GAINESVILLE        FL 32614
(352) 377-2002

AUDIT PERIOD: FROM 10-28-2002 TO 10-28-2003 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING
        ADDRESS SHOWN ABOVE.

SEE AUDIT ADJUSTMENT(S) ON ATTACHED SCHEDULE.

PHONE

55096 (2/89)

1334   01-14-2004

GENERAL LIABILITY FINAL AUDIT                                    PAGE    1

## *Auto-Owners*

INSURANCE COMPANY                              POLICY NUMBER 884612 20393748 02
6101 ANACAPRI BLVD LANSING MI  48917-3968     AGENCY BILL

INSURED: B K CYPRESS LOG HOMES INC            AGENCY: 12-0204-00   MKT TERR: 055
                                              SCARBOROUGH COMPANY INSURANCE INC
        PO BOX 191                            PO BOX 147050
        BRONSON              FL 32621-0191    GAINESVILLE        FL 32614
                                              (352) 377-2002


AUDIT PERIOD: FROM 10-28-2002 TO 10-28-2003 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING
             ADDRESS SHOWN ABOVE.


                                      ACTUAL                              BASIS/
                                      EXPOSURE          RATE              PREMIUM

   LOC/SLOC 0001/001 609 GILBERT STREET

                   BRONSON           FL  32621

CLASSIFICATION 12362   DISTRIBUTORS - NO FOOD OR DRINK
                       NOC                                        GROSS SALES

   PERIOD 10-28-2002 TO 10-28-2003
     PREM/OP                         1,788,677        0.1470                 263
     PROD/COMP OP                    1,788,677        2.0110               3,597

CLASSIFICATION 59985   WOOD PRODUCTS MFG. NOC
                                                                 GROSS SALES

   PERIOD 10-28-2002 TO 10-28-2003
     PREM/OP                           829,199        0.9440                 783
     PROD/COMP OP                      829,199        1.9940               1,653

CLASSIFICATION 91340   CARPENTRY - CONSTRUCTION OF
                       RESIDENTIAL PROPERTY NOT EXCEEDING        PAYROLL

   ADDITIONAL INTERESTS
   CODE  49950
   DESIGNATED PER/ORGANIZATION C

   MOUNTAIN CREEK LOG

   LOG HOME LIVING INST

   LESSOR OF LEASED EQUIPMENT

   HIGHLAND TRACTOR CO

   LOC/SLOC 0002/001 6751 NE CR 337

                   BRONSON           FL  32621




   NOTE: * - AUDITED CLASS




55097 (2/89)                                            1335   01-14-2004

GENERAL LIABILITY  FINAL AUDIT                    PAGE   2

## *Auto-Owners*

INSURANCE COMPANY                              POLICY NUMBER 884612 20393748 02
6101 ANACAPRI BLVD LANSING MI  48917-3968      AGENCY BILL

INSURED: B K CYPRESS LOG HOMES INC             AGENCY: 12-0204-00   MKT TERR: 055
                                               SCARBOROUGH COMPANY INSURANCE INC
            PO BOX 191                          PO BOX 147050
            BRONSON              FL 32621-0191  GAINESVILLE      FL 32614
                                                (352) 377-2002

AUDIT PERIOD: FROM 10-28-2002 TO 10-28-2003 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING
             ADDRESS SHOWN ABOVE.

|  | ACTUAL EXPOSURE | RATE | BASIS/ PREMIUM |
|---|---|---|---|
| CLASSIFICATION 59985    WOOD PRODUCTS MFG. NOC | | | |
| | | | GROSS SALES |

| | | | |
|---|---|---|---|
| TOTAL GL AUDITABLE PREMIUM | | $ | 6,296.00 |
| TOTAL GL NON-PREM TAXES | | $ | 6.29 |
| TOTAL GL PREMIUM | | $ | 6,302.29 |
| TOTAL GL PREMIUM CREDITED | | $ | 7,784.77 |
| GL RETURN PREMIUM | | $ | 1,482.48 |

NOTE: �居 - AUDITED CLASS

55097 (2/89)                                        1336   01-14-2004

E

X

H

I

B

I

T


B

**EXHIBIT B**



Swartz Campbell LLC
Attorneys & Counselors at Law

Central & South Florida Offices
SunTrust Center
250 South Orange Avenue
Suite P-100 [Park Building]
Orlando, Florida 32801

Steven M. Brady
*Managing Shareholder, Florida Operations*

(voice)  407.209.1000
(fax)    407.209.1001
sbrady@swartzcampbell.com
www.swartzcampbell.com

Fort Myers/South Florida Offices:  239.790.7700

Wednesday, July 16, 2008

**BY FEDERAL EXPRESS AND U.S. MAIL**
Florida Department of Financial Services
Consumer Assistance/Civil Remedy Section
Larson Building
200 E. Gaines Street
Tallahassee, FL 32399-0322
Telephone:  850-413-3132
Facsimile:  850-488-6372

| DFS FILE NO.: |
|---|

## CIVIL REMEDY NOTICE OF INSURER VIOLATION

*(This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.)*

Re:   Insurer:            Auto-Owners Insurance Company
       Insurer FEIN No.: 380315280
       Insurance:          Commercial Property & Casualty
       Insured:            Jim & Ada Marie Keeton
       d/b/a/ BK Cypress Log Homes Inc.
       Complainant:       Jim & Ada Marie Keeton
                            d/b/a/ BK Cypress Log Homes Inc.
       Policy No.:          884612-20393748
       Claim No.:           21-00388-00

Wednesday, July 16, 2008
Page 2

      Attorney:      Steven M. Brady, Esq.
      Address:      250 South Orange Avenue, Suite P-100
                      SunTrust Center [Park Building]
                      Orlando, FL 32801

This Civil Remedy Notice is premised upon the commission of the following acts by Auto-Owners Insurance Company (Auto-Owners) in its claims handling of the above captioned claim:

1.    Failing to adopt and implement standards for the proper investigation of claims;

2.    Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

3.    Failing to acknowledge and act promptly upon communications with respect to claims;

4.    Failing to affirm or deny full or partial coverage of claims and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured, within 30 days after proof-of-loss statements have been completed;

5.    Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;

6.    Failing to promptly notify the insured of any additional information necessary for the processing of the claim; failing to clearly explain the nature of the requested information and the reasons why such information is necessary; and

7.    Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;

Wednesday, July 16, 2008
Page 3

Auto-Owner's has committed the foregoing with such frequency as to indicate a general business practice.

Pursuant to the requirements of Section 624.155(2)(b)1, F.S., the statutory provisions, including the specific statutory language, which Auto-Owners violated is detailed below:

624.155     Civil remedy.—

(1)     Any person may bring a civil action against an insurer when such person is damaged:

(a)     By a violation of any of the following provisions by the insurer:

1.     Section 626.9541(1)(i), (o), or (x);

. . .

(b)     By the commission of any of the following acts by the insurer:

1.     Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests . . .

626.9541     Unfair methods of competition and unfair or deceptive acts or practices defined.—

(1)     UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS.—The following are defined as unfair methods of competition and unfair or deceptive acts or practices:

(i)     *Unfair claim settlement practices.*—

. . .

3.     Committing or performing with such frequency as to indicate a general business practice any of the following:

a. Failing to adopt and implement standards for the proper investigation of claims;

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

> c. Failing to acknowledge and act promptly upon communications with respect to claims;
>
> . . .
>
> e. Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;
>
> f. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement;
>
> g. Failing to promptly notify the insured of any additional information necessary for the processing of a claim; . . .

627.426    Claims administration. —

    (2)    A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:

        (a)    Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and

        (b)    Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

            1.    Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;

            2.    Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer

Wednesday, July 16, 2008
Page 5

> during and following the pendency of the subject
> litigation; or
>
> 3.   Retains independent counsel which is mutually
> agreeable to the parties. Reasonable fees for the counsel
> may be agreed upon between the parties or, if no
> agreement is reached, shall be set by the court.

Pursuant to the requirements of Section 624.155(2)(b)1, F.S., the policy provisions,
including the specific policy language, that are relevant to the violation are detailed
below, as are the facts and circumstances giving rise to the violation:

Jim and Ada Marie Keeton are the principles of BK Cypress Log Homes, Inc. BK
Cypress is a company that sells building materials and blueprints for use in cypress
log home construction. On June 22, 2004, a lawsuit was filed against BK Cypress
by Mark and Diane Senti alleging:

> "On or about December 22, 1996 [they] ordered . . . tidewater cypress logs. . . . [But] in
> the middle of July 1999, the plaintiffs began noticing holes in the logs purchased from
> the defendants and piles of saw dust which emanated from the holes. . . . The plaintiffs
> verbally notified the defendants in late July 1999 and on or about September 24, 1999. .
> ., in writing, of a defect in the logs in the form of infestation by wood destroying
> organisms or insects. . . . [M]ore wood destroying organisms or insects have appeared
> and continue to appear through the date of this complaint and have caused damage to the
> log home."

BK Cypress was insured by Auto-Owners from October 28, 1996 through October
28, 2002 under a policy of insurance which provided:

### SECTION I – COVERAGES

#### COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   **Insuring Agreement.**

> We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies. We will have the right and duty to defend
> any "suit" seeking those damages. (Emphasis added.)

Wednesday, July 16, 2008
Page 6

Auto-Owners received timely notice of the loss alleged by the Sentis—many years before they filed their complaint, actually—and on March 9, 2000, it wrote to BK Cypress advising:

> We are reserving our rights to disclaim at a later date any obligation of Auto-Owners Insurance Company under the policy identified above to assert the defense of non-coverage under the policy by reason of the following:
>
> Section 1. Part 2,
>
> m.   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
>   (1)   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
>   (2)   A delay or failure by your or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> _This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use._ (Emphasis added.)
>
> n.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
>   (1)   "Your product";
>   (2)   "Your work"; or
>   (3)   "Impaired property".
>
> if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition.

There is, and should be, insurance coverage under the Auto-Owners insurance policy for the structural damage caused by the "wood destroying organisms or insects" to other property (that is, the log home!) as alleged in the complaint; and, despite its reservation of rights letter, Auto-Owners never disclaimed at a later date any of its contractual obligation under the subject policy of insurance, nor did it assert the defense of non-coverage.    Rather, it simply failed—utterly and completely—to communicate with its insured, to communicate with its insured's

counsel, and to take any action of any kind whatsoever in furtherance of the administration of its insured's claim in violation of Florida's claims administration statutes.

Even assuming, arguendo, that there were coverage issues—and it is important to note again that Auto-Owners never denied coverage—Auto-Owners should have afforded BK Cypress with a defense based upon the allegations of the Sentis' complaint against it. An insurer's duty to defend is broader than the duty to pay or indemnify and it involves distinct responsibilities beyond the coverage issues. Allstate Ins. Co. v. Ginsberg, 863 So. 2d 156, 163 F.4 (Fla. 2003)(*citing* Allstate Insurance Co. v. RJT Enterprises, Inc., 692 So.2d 142, 144-145 (Fla. 1997)). It is well-settled law in Florida that a liability insurer's obligation to defend a claim made against its insured must be determined solely from the allegations in the complaint. Higgins v. State Farm Fire & Cas. Co., 894 So. 2d 5, 18 (Fla. 2004)(*dissenting opinion*)(*citing* Nat'l Union Fire & Ins. Co. v. Lenox Liquors, Inc., 358 So. 2d 533, 536 (Fla. 1977)). It is equally well-settled law in Florida that "[a]ll ambiguities and uncertainties are to be resolved in favor of the insured and against the company." Hodges v. National Union Indem. Co., 249 So. 2d 679, 680 (Fla. 1971)(*citing* 18 Fla.Jur., Insurance, § 94, pp. 86-88). It is so much so that the Supreme Court has written, "No cases need be cited in support of the well-settled rule that an uncertainty or ambiguity in a contract of insurance will be resolved in favor of the insured." Bank of Miami Beach v. Fidelity & Casualty Co., 239 So. 2d 97, 99 (Fla. 1970). Accordingly, given the facts of this case, Auto-Owner's continued refusal to extend a defense to BK Cypress was not in good faith.

Auto-Owners breached its contract of insurance with BK Cypress in so far as:

    a.    It failed and refused to communicate with BK Cypress in any way whatsoever regarding the claims brought against it by the Sentis;

    b.    It failed and refused to affirm or deny coverage for the claims brought against BK Cypress by the Sentis;

    c.    It failed and refused to provide BK Cypress with a defense to the claims brought against it by the Sentis;

d.  It failed and refused to retain mutually agreeable counsel for BK Cypress in the underlying lawsuit, in violation of Florida Statute §627.426(2)(b) and

e.  It failed and refused to indemnify BK Cypress for any of the claims brought against it by the Sentis.

As a foreseeable result of Auto-Owners breaches, *above,* BK Cypress has been damaged in so far as:

a.  It was not indemnified for the amount of the judgment against BK Cypress and in favor of the Sentis, and it is entitled to indemnification for the amount of the judgment plus interest totaling $528,187.50;

b.  It was forced to incur and/or become responsible for attorney's fees and costs for the investigation and defense of the claims brought against it by the Sentis, for which it would not have otherwise had the insurance company not breached the insurance policy, and it is entitled to indemnification for those attorney's fees and costs plus interest totaling at least $27,621.34;

c.  It has been forced to incur and/or become responsible for attorney's fees and costs for the investigation and prosecution of litigation against Auto-Owners for the foregoing, and it is entitled to indemnification for those attorney's fees and costs plus interest totaling at least $11,653.16; and,

d.  Its key personnel devoted valuable and irreplaceable time to the administration of the defense resulting in the loss of valuable business opportunities, and it is entitled to those resultant damages as would make it whole, the amount of which has not yet been calculated.

Respectfully submitted,

Steven M. Brady, Esq.
SMB/taf

Wednesday, July 16, 2008
Page 9

Enclosure:

      1.    Civil Remedy Notice


cc:

Auto-Owners Insurance Company
6101 Anacapri Blvd.
Lansing, MI 48917-3968

Anthony V. LaNasa, Jr., Esq.
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
109 N. Brush Street, Suite 500
Tampa, FL 33602



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**
DIVISION OF CONSUMER SERVICES — CONSUMER ASSISTANCE

| DFS FILE #: | |
|---|---|

## CIVIL REMEDY NOTICE OF INSURER VIOLATION
INSTRUCTION FOR COMPLETING THIS FORM ON REVERSE SIDE

| | |
|---|---|
| Date Submitted: | ~~MAY 5, 2008~~ July 16, 2008 | INS.CO. FEIN: 380315280 |
| 1. Company: | AUTO - OWNERS INSURANCE COMPANY |
| Street Address: | 6101 ANACAPRI BLVD. |
| City/State/Zip: | LANSING, MI 48917 |
| Individual(s) Involved: | PAULA WALLIS, BRANCH CLAIMS REP., P.O. BOX 24700, LAKELAND, FL 33802 |

**This notice is given for the purpose of perfecting the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.**

☒ Insured   ☐ Third Party   ☐ Other

2. Complainant: JIM AND ADA MARIE KEETON D/B/A BK CYPRESS LOG HOMES, INC

| Insured Name: AS ABOVE | Policy No: 88461 7 - 20393798 |
|---|---|
| Complainant Name: AS ABOVE | Claim No: 21 - 00388 -00 |

Attorney (if any): STEVEN M. BRADY ESQ.

Street Address: 250 S. ORANGE AVE, SUITE P100

| City/State/Zip/City: | ORLANDO | FL | 32801 | |
|---|---|---|---|---|

**3. TYPE OF INSURANCE:**
☐ Accident & Health      ☐ Life & Annuity      ☐ Residential Property & Casualty
☐ Medicare Supplement   ☐ Auto            ☒ Commercial Property & Casualty
☐ Miscellaneous

**4. REASON FOR VIOLATION:**
☐ Cancellation/Non-renew   ☒ Claim Denial        ☒ Unsatisfactory Settlement Offer
☒ Claim Delay           ☒ Unfair Trade Practice ☐ Other

**5. PURSUANT TO SECTION 624.155, F.S. please provide the statutory provision, including the specific language of the statute, which the insurer allegedly violated.**

List Statute numbers:
F.S. 626.9541

Statute Language:

SEE ATTACHED CORRESPONDENCE.

**6. Briefly reference the specific policy language that is relevant to the violation, if any. If the person brining the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the insurer has not provided a copy of the policy to the third party claimant pursuant to written request.**

SEE ATTACHED CORRESPONDENCE

**7. Briefly describe the facts and circumstances giving rise to the violation.**

SEE ATTACHED CORRESPONDENCE.

DFS-I0-363
Rev. 9/2005

**Composite Exhibit C**

COMPOSITE EXHIBITC

IN THE CIRCUIT COURT OF THE
EIGHTH JUDICIAL CIRCUIT, IN AND
FOR LEVY COUNTY, FLORIDA

STEMSYS CORP., f/k/a GSMA,
SYSTEMS, INC.,                          CASE NO: 38-2004-CA-549

       Plaintiff,

vs.

B.K. CYPRESS LOG HOMES, INC.,

       Defendant.

_____/

### COBLENTZ AGREEMENT, SETTLEMENT AGREEMENT, CONSENT FINAL JUDGMENT, COVENANT NOT TO RECORD OR EXECUTE JUDGMENT, AND ASSIGNMENT OF RIGHTS AND BENEFITS UNDER AUTO-OWNERS INSURANCE POLICY

Plaintiff Stemsys Corp., f/k/a GSMA Systems, Inc., (hereinafter "Stemsys") and

Defendant B.K. Cypress Log Homes, Inc. (hereinafter "BK") settle this lawsuit pursuant to the

following terms:

1. BK and Stemsys hereby settle this case in all respects.

2. BK stipulates that the attached Consent Final Judgment may be entered against it in favor

    of Stemsys, as representative and inclusive of all damages claimed by Stemsys and

    against BK in this case. These damages claimed in the Complaint in this case include,

    but are not limited to, damage to the home, reduction in value of the home, out-of-pocket

    fees, costs and expenses, loss of use, pre-judgment interest and waste and deterioration of

    the home, damage to personal property and the work of other trades, all flowing from

    defective logs supplied by BK to Stemsys, which in turn damaged the home.

3. The amount of this Settlement Agreement, Coblentz Agreement and attached Consent

    Final Judgment is $450,000 (four hundred fifty thousand dollars).

-1-

Stemsys v. BK Cypress
Levy County Circuit Civil
Case No. 38-2004-CA-549

4. The parties agree that, under all circumstances, this settlement amount is fair and is being
   made in good faith. BK and Stemsys agree to use their best efforts to have the Court
   enter the attached Consent Final Judgment, but failure for any reason to have this
   accomplished shall in no way obviate or lessen the finality of this Agreement.

5. BK hereby assigns to Stemsys all its rights and benefits under its Auto-Owners Insurance
   Company ("Auto-Owners") insurance policy [Policy #884612-20393748] to recover
   directly from Auto-Owners and from any other parties [except BK or James L. Keeton],
   pursuant to this Coblentz Agreement, Consent Final Judgment, and Assignment of
   Benefits, the damages claimed by Stemsys in this case as reflected in the Consent Final
   Judgment. This Agreement, Assignment of Benefits and Consent Final Judgment are
   entered into as a direct result of the failure of Auto-Owners to indemnify and defend and
   to properly handle this claim and lawsuit for BK for the claims brought against BK in this
   case.

6. Notwithstanding any other provision of this Agreement, BK retains all rights and benefits
   under law that are necessary to recover directly from Auto-Owners those damages and
   benefits not covered by Paragraphs 2 and 3, including, but not limited to, the attorneys'
   fees and costs it paid in the underlying action to defend the case, interest, other attorneys'
   fees, and all other consequential damages not covered by this Consent Final Judgment.
   Put another way, BK reserves its right to recover from Auto-Owners any and all
   damages, separate and apart from the Consent Judgment, arising out of Auto-Owners'
   breach of contract, failure to defend, and other claims handling practices relating to this
   loss.

-2.

Stemsys v. BK Cypress
Levy County Circuit Civil
Case No. 38-2004-CA-549

7.  This Consent Judgment will serve as a final disposition of Defendant BK's involvement and liability in this action.

8.  Covenant Not to Execute: Stemsys agrees not to record or execute upon this or any other judgment against BK.

9.  Agreement to Execute Further Documents. BK agrees to reasonably assist Stemsys its successors and assignees to exercise its rights under the relevant Auto-Owners insurance policy.

10. Neither party agrees to indemnify or defend the other in relation to this agreement.

11. Integration Clause: Any promise not contained herein is not a part of this agreement. Any changes to this agreement must be made in writing, and must be approved in writing by each party.

12. Stemsys accepts this agreement as full settlement of its claims against BK arising from this lawsuit.

STEMSYS CORP., f/k/a GSMA,
SYSTEMS, INC.

Plaintiff ~ President

Date: 10/02/06

B.K. CYPRESS LOG HOMES
INC.

Defendant, by and through its
President, James Keeton

Date: 9·23·06,

-3-

Stemsys v. BK Cypress
Levy County Circuit Civil
Case No. 38-2004-CA-549

7.  This Consent Judgment will serve as a final disposition of Defendant BK's involvement
    and liability in this action.

8.  ·Covenant Not to Execute:  Stemsys agrees not to record or execute upon this or any other
    judgment against BK.

9.  Agreement to Execute Further Documents.  BK agrees to reasonably assist Stemsys its
    successors and assignees to exercise its rights under the relevant Auto-Owners insurance
    policy.

10. Neither party agrees to indemnify or defend the other in relation to this agreement.

11. Integration Clause:  Any promise not contained herein is not a part of this agreement.
    Any changes to this agreement must be made in writing, and must be approved in writing
    by each party.

12. Stemsys accepts this agreement as full settlement of its claims against BK arising from
    this lawsuit.

STEMSYS CORP., f/k/a GSMA,                          B.K. CYPRESS LOG HOMES
SYSTEMS, INC.                                       INC.


_____                           _____
Plaintiff                                          Defendant, by and through its
                                                   President, James Keeton

Date: _____                             Date: 9·23-06

-3-

IN THE CIRCUIT COURT OF THE
EIGHTH JUDICIAL CIRCUIT, IN AND
FOR LEVY COUNTY, FLORIDA

STEMSYS CORP., f/k/a GSMA,
SYSTEMS, INC.,

CASE NO: 38-2004-CA-549

     Plaintiff,

vs.

B.K. CYPRESS LOG HOMES, INC.,

     Defendant.

_____/

## CONSENT FINAL JUDGMENT

THIS CAUSE having come to be considered by the Court for entry of this Consent Final

Judgment, and the Court being fully advised in the premises, it is hereby

ORDERED AND ADJUDGED:

1.    Final Judgment is hereby rendered in this cause in favor of Plaintiff, Stemsys

Corp., f/k/a GSMA Systems, Inc., and against Defendant, B.K. Cypress Log Homes, Inc., in the

amount of $450,000 (Four Hundred and Fifty Thousand Dollars).

2.    This terminates all judicial labor in this cause as between said Plaintiff and

Defendant BK.

3.    The address of the plaintiff is 2783 U.S. 1, Malabar, Florida 32950.

DONE AND ORDERED in Chambers at Bronson, Levy County, this ___30___ day of

_October_, 2006.

ORIGINAL SIGNED BY
MAURICE V. GIUNTA
CIRCUIT JUDGE
CIRCUIT JUDGE

Conformed copies to:

-1-

Stemsys v. BK Cypress
Levy County Circuit Civil
Case No. 38-2004-CA-549

*Counsel for plaintiff*
Karl W. Bohne, Jr., Esquire
Karl W. Bohne, Jr., P.A.
1803 Airport Boulevard
Melbourne, Florida 32901
Telephone: (321) 723-5121
Facsimile: (321) 984-5426
Email: kwbjrpa@yahoo.com

*Counsel for defendant*
Steven M. Brady, Esquire
Swartz Campbell LLC
SunTrust Center
250 South Orange Avenue
Suite P-100 [Park Building]
Orlando, Florida 32801
Telephone: (407) 209-1000
Facsimile: (407) 209-1001
Email: sbrady@swartzcampbell.com

Align top of FedEx Shipping Label here.

Press Here.  Press Here.  Press Here.  Press Here.  Press Here.

FedEx Ship Manager - Print Your Label(s)

Page 1 of 1

From:  Origin ID: M*HA  (305) 5/ /-3996
Naomi Sakata
Van Ploeg
100 SE 2 Street
30th Floor
Miami, FL 33131

FedEx Express

BILL SENDER

SHIP TO:  (352) 380-2400
Clerk of the Court
U.S. District Court, Gainesville
401 SE 1Avenue
Room 243
Gainesville, FL 32601

Ship Date: 02OCT09
ActWgt: 3.0 LB
CAD: 740392/INET9090
Account#: S ********

Delivery Address Bar Code

Ref # B022.100 - B-K Cypress
Invoice #
PO #
Dept #

MON - 05OCT
PRIORITY OVERNIGHT

TRK# 7969 9813 8304
0201

SC CDKA

32601
FL-US
JAX

The World On Time

Express