THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

B-K CYPRESS LOG HOMES INC,

        Plaintiff,

v.                                                       Case No.  1:09-cv-211-GRJ

AUTO-OWNERS INSURANCE COMPANY,

        Defendant.
_____,

## O R D E R

This case is before the Court on Doc. 199, Plaintiff B-K Cypress' *Daubert* Motion to Exclude Testimony of Defendant's Expert Jeffrey Harrison; Doc. 211, Defendant Auto-Owner's *Daubert* Motion to Exclude Evidence (testimony of Plaintiff's expert Dr. Stanley P. Stephenson); and Doc. 215, Plaintiff B-K Cypress' Motion to Strike Raffa and Harrison Affidavits submitted in support of Defendant's *Daubert* motion.  The parties have responded to the motions and therefore the motions are ripe for decision.

### I.  **Procedural Background: Expert Disclosures**

Pursuant to the Joint Scheduling Report, Doc. 23, and the Court's Order adopting same, Doc. 24, B-K Cypress' expert disclosure was originally due on June 18, 2010, and Auto- Owners' expert disclosure was originally due on July 19, 2010.  B-K Cypress submitted the expert report of Dr. Stanley P. Stephenson on June 18, 2010.  Dr. Stephenson's report was limited to the issue of the economic damages sustained by B-K Cypress as a result of Auto-Owners' bad faith.

On September 1, 2010, the Court granted the parties' Joint Motion to Modify Scheduling Deadlines. Doc. 52. The deadline for B-K Cypress' expert disclosure was November 15, 2010, and the deadline for Auto-Owners' expert disclosure was December 15, 2010. The discovery deadline was set as January 14, 2011. *Id*. B-K Cypress received a further extension for its expert disclosure until March 7, 2011, (Doc. 63) and on that date B-K Cypress submitted the report of an insurance expert, Peter Knowe. Knowe's expert opinion is not at issue.

On March 11, 2011, Auto-Owners submitted for the first time the expert report of Jeffrey L. Harrison, which rebuts Dr. Stephenson's June 18, 2010, report but does not independently opine as to B-K Cypress' damages. B-K Cypress moved to strike Auto-Owners' expert disclosure as untimely. Doc. 86. This motion was stricken as moot when Judge Paul entered judgment for Plaintiff on the issue of liability as a sanction for Defendant's discovery violations. Doc. 106. However, the Court permitted Mr. Harrison's report to be filed. His deposition was taken on October 5, 2011.

On November 2, 2011, the Court entered a new scheduling order which established a discovery deadline, including expert depositions, of December 16, 2011. However, due to Dr. Stephenson's unavailability the parties consented to taking his deposition outside of the discovery deadline and his deposition was taken on March 7, 2012. Docs. 173, 200 (notice of filing deposition of Stephenson).

## II. Discussion

Under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*,[1] and *Kumho Tire Company Ltd., et al., v. Carmichael*[2] expert testimony is admissible if (1) the expert is qualified to testify competently, (2) the expert has used sufficiently reliable methodology in reaching a conclusion, and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.[3] While *Daubert* dealt with scientific evidence, and *Kumho* dealt with technical knowledge, the *Daubert* analysis applies equally as well to the evaluation of the reliability of non-scientific based expert testimony.[4]

Among the factors that courts are to consider under the *Daubert* analysis are: (1) whether the expert's methodology has been tested, (2) whether the theory has been subjected to peer review and publication, (3) whether there are standards to guide the use of the technique, and (4) whether the theory or technique has been generally accepted in the scientific community.[5] These factors are illustrative and the trial court is granted considerable flexibility in adapting its analysis to fit a particular case.[6] The trial court should also be mindful of other rules of evidence such as Rules 703, 706, and

---

[1] 509 U.S. 579, 589 (1993)

[2] 526 U.S. 137 (1999).

[3] *City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)(*citing Daubert*, 509 U.S. at 589.)

[4] *See, e.g. United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004)("The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony.").

[5] *Daubert*, 509 U.S. at 593-94.

[6] *Kumho*, 526 U.S. at 152.

403. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[7]

According to the Eleventh Circuit, a trial court's focus should be on the expert's methodology and its application, not on the expert's conclusions.[8] However, a trial court must "examine the expert's conclusions in order to determine whether the conclusion could reliably flow from the facts known to the expert and the methodology used."[9] Nothing requires a district court to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[10]

With these principles in mind, the Court will consider the parties' motions.

### A.     Defendant's Motion to Exclude Dr. Stephenson's Testimony and Plaintiff's Motion to Strike Defendant's Affidavits

Auto-Owners moves to strike Dr. Stephenson's opinion regarding the damages sustained by B-K Cypress as a result of Auto-Owners' bad-faith conduct in handling the third-party claim underlying this case. Auto-Owners submits that the methodology applied by Dr. Stephenson in determining Plaintiff's economic losses is not reliable

---

[7] *Daubert*, 509 U.S. at 596.

[8] *See City of Tuscaloosa*, 158 F.3d 548, n.25 (proper inquiry regarding reliability of methodologies of economic experts is not whether other experts reach same conclusions, but whether techniques utilized are reliable in light of the relevant factors).

[9] *Heller v. Shaw*, 167 F.3d 146, 153 (3d Cir.1999).

[10] *General Elec. Co. v. Joiner*, 522 U.S. 136, 145–46 (1997).

because Dr. Stephenson's techniques are not generally accepted in the economic community and are therefore inadmissible. Doc. 211.

In support of the motion, Auto-Owners submits the affidavits of its expert, Professor Jeffrey Harrison, and of economist Frederick A. Raffa, Ph.D. Dr. Raffa has not previously been identified as an expert witness. B-K Cypress moves to strike the affidavits as improper attempts to elicit new and previously undisclosed expert rebuttal testimony. Doc. 215. A review of the affidavits reflects that they are offered as rebuttal to Dr. Stephenson's Report. Pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii), "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party," the disclosure of the expert must be made within 30 days after the other party's disclosure. With respect to Professor Harrison's affidavit, the opinions expressed are essentially the same as set forth in his report that was previously disclosed. However, Dr. Raffa is a new expert, and the Court concludes that his affidavit should be stricken because the disclosure of his rebuttal opinion is untimely.

Dr. Stephenson's curriculum vitae is attached to his "Report on Economic Damages to B-K Cypress Log Homes, Inc.," Doc. 203. To summarize, Dr. Stephenson is the founder and Managing Principal of Litigation Economics, LLC, an economic consulting firm with offices in California, Connecticut, Florida, and Washington, D.C. Dr. Stephenson holds B.A. and Ph.D. degrees in economics, and was an Associate Professor of Economics and an Associate Professor of Business Administration at the Pennsylvania State University and the University of Hartford. He was an Assistant Vice-President of Aetna International Inc., the Managing Director of Management & Strategy Analysis, Inc., and a Regional Commissioner of the Bureau of Labor Statistics.

In each of these positions, Dr. Stephenson was involved in defining and measuring economic value. He is a member of the National Association of Certified Valuation Analysts, and the National Association of Forensic Economists. Dr. Stephenson has written more than 35 journal articles, technical reports, and book chapters regarding economic valuation issues. He has been retained as an expert in the determination of economic damages in more than 300 cases arising from personal injuries and commercial disputes. He recently published an article in an academic journal entitled "Computing Lost Profits in Business Interruption Litigation: A General Model" (Journal of Business Valuation and Economic Loss Analysis (JBVELA) (Berkeley Electronic Press/UC Berkeley 2011)), a copy of which is included in B-K Cypress' response in opposition to Auto-Owners *Daubert* motion, Doc. 233.

In this case Auto-Owners does not challenge the qualifications of Dr. Stephenson as an expert. Therefore, the Court will not discuss the first prong *of Daubert* and concludes, for purposes of the *Daubert* analysis, that Dr. Stephenson is qualified to testify competently regarding the matters identified in his Report. Having determined that Dr. Stephenson is competent to testify to the matters in his expert report, the Court must review the factors outlined in *Daubert* to determine whether Dr. Stephenson's opinions are reliable and relevant.

As Auto-Owners observes, "Lost profits are generally proven by one of two methods: (1) the before and after theory or (2) the yardstick test." *4 Corners Ins., Inc. v. Sun Pub'lns ov Fla., Inc.,* 5 So.3d 780, 783 (Fla. 2d DCA 2009) (citing *G.M. Brod & co. v. U.S. Home Corp.,* 759 F.2d 1526, 1538 (11th Cir. 1985)). There can be little dispute that these methods are generally accepted in the economic community. In his Report,

Dr. Stephenson uses both of these methods in a two-part model that reflects alternative lost-profit calculations.

In the first part of his analysis, Dr. Stephenson's Report states that he analyzed B-K Cypress' expenses that vary directly with sales, such as cost of goods sold, direct labor, and sales commissions. Dr. Stephenson used profit/loss statements to determine B-K Cypress' profit margin before and after the damages period, which Dr. Stephenson determined commenced in August 2000 when the first lawsuit connected with Auto-Owners' claims practices was filed against B-K Cypress (the Connor lawsuit). Dr. Stephenson determined that B-K Cypress' profit margin before August 2000 was 26.1%, and that after August 2000 it was 22.6%, for a difference of 3.6%. The Report states that although B-K Cypress' production and sales rose after 1999, an event which he says would normally create economies of scale, the company instead experienced an increase in variable costs and a reduction in profit margin. Dr. Stephenson attributes the difference in the profit margin to impacts created by Jim Keeton's participation in dispute-related activities that should have been handled by Auto-Owners, which resulted in operational inefficiencies. Doc. 203-1 at 6. Dr. Stephenson applied the difference in profit margin to B-K Cypress' sales after August 2000 and through 2009, and concluded that the change resulted in a loss of $1,565,247. He explained that "[t]his is a first part of economic loss, one that does not depend on sales loss but focuses on changes in variable costs of production and associated profit margins." *Id*.

The second part of Dr. Stephenson's loss model considered "what B-K sales would have been had the company matched the industry average sales for the loss

period starting in [August 2000]." *Id.* Dr. Stephenson based this part of the model on the premise that Jim Keeton's participation in dispute-related matters prevented him from using his time to generate additional sales. Dr. Stephenson used sales information from a log-home industry publication for the years 1995, 2001, and 2003. Because there was no published industry information after 2003, a "sample survey" was conducted of members of the Log Homes Council that yielded growth rate numbers for six companies. Dr. Stephenson did not conduct the sample survey. Based upon Dr. Stephenson's deposition testimony, it appears that the survey was conducted by Jim Keeton, who provided the results to Dr. Stephenson. Dr. Stephenson could not testify as to the contents of the survey or other details such as how many companies were surveyed, or specifically how the six companies included in the Report compare to B-K Cypress. Based on this information, and applying the B-K profit margin of 26.1% from the 1994-2000 profit and loss statements, Dr. Stephenson concluded that B-K Cypress experienced lost profits of $413,152. Doc. 203-1, Report Exhibit 4.[11]

Lastly, Dr. Stephenson analyzed B-K Cypress' financial statements and interviewed company officials to determine that B-K Cypress had incurred extraordinary expenses, such as legal and travel costs, of $199,244 due to the bad faith of Auto-Owners. Dr. Stephenson posits that damages using the lost profit margin analysis total $1,764,491 (including extraordinary expenses), that damages using the lost revenue analysis totals $612,395 (including extraordinary expenses), and that B-K Cypress' total

---

[11] At his deposition in March 2012, Dr. Stephenson stated that he had prepared a revised Exhibit 4 in response to the Report of Auto-Owner's expert, which resulted in an increase of about a million dollars in this damage calculation. *Stephenson Deposition*, Doc. 200-1, at 137-39. It is unclear whether Dr. Stephenson has submitted a revised Report including this exhibit. The copy of his Report submitted with the instant motion is the May 2010 version, and the copy of the deposition filed with the Court does not include the deposition exhibits.

economic damages are $2,177,643, which includes the damages calculated from each part of the loss model plus the extraordinary expenses.  Doc. 203-1 at 7.

With respect to Dr. Stephenson's "before and after" analysis, Auto-Owners contends that the analysis is not accepted by other experts in the field because it does not control for variables in market conditions but instead assumes that all loss in profitability is attributable to Auto-Owners' bad faith.  In support of this argument, Auto-Owners has submitted the report of its own expert, Jeffrey L. Harrison, as well as affidavits from Professor Harrison and from Frederick A. Raffa.  Docs. 166, 207, 202.  Professor Harrison (whose expert report is the subject of B-K Cypress' *Daubert* motion), contends that Dr. Stephenson's report "lacks economic merit and is inconsistent with any acceptable damage methodology."  Doc. 166-1.  Professor Harrison criticizes Dr. Stephenson's report for failing to describe the connection between either component of his loss model and the bad faith of Auto-Owners.  Professor Harrison states that the "before and after" model can reflect the damages caused by a Defendant's actions "only if other possible causes are examined and eliminated."  *Id*. at 5.  Professor Harrison finds particular fault with the lack of data documenting the amount of time Jim Keeton may have expended attending to Auto-Owners related matters, and the Report's failure to account for time he would have expended on such matters even if Auto-Owners had not acted in bad faith.

The Court concludes that Dr. Stephenson's Report reflects the application of a well-known "before and after" method for measuring lost profits, and that his testimony will assist the jury in determining the amount of damages incurred by B-K Cypress' as a result of Auto-Owners' bad faith.  Auto-Owners and its expert have criticized the

application of the methodology, but their criticisms are appropriately raised by way of cross-examination of Dr. Stephenson and B-K Cypress' other witnesses regarding the assumptions underlying the damages calculation. It remains within the province of the jury to consider and weigh such evidence and determine whether in fact some or all of the damages determined by Dr. Stephenson are causally connected to Auto-Owners' actions.[12]  Accordingly, such testimony will not be excluded.

With respect to Dr. Stephenson's "yardstick" analysis, Auto-Owners also asserts that Dr. Stephenson's technique is not generally accepted in the economic community, in view of the fact that B-K Cypress has been in business since 1979. Auto-Owners argues that even if the yardstick approach was a proper method for computing lost profits in this case, the methodology was improperly applied because the Report does not establish that the businesses used to measure B-K Cypress' losses are sufficiently similar to B-K Cypress. In support of this argument, Auto-Owners cites *Devon Medical, Inc. v. Ryvmed Medical, Inc.,* 60 So.3d 1125 (Fla 4th DCA 2011) (reversing award of lost anticipated profits based on yardstick model because experts did not provide evidence that comparison company was closely comparable to plaintiff company in size, location, profits, and position, but made only a blanket statement regarding similarity); *River*

---

[12]Auto-Owners also contends that Dr. Stephenson's analysis improperly analyzes the "before" time period, as reflected in deposition testimony that he did not analyze B-K Cypress' data outside of the damages period. But a review of the deposition reflects that the cited testimony pertained to Dr. Stephenson's "yardstick" analysis of sales growth rate, which he admitted did not compute the growth rate for B-K Cypress prior to August 2000.  *See Stephenson Deposition*, Doc. 200-1, at 126-29. According to Dr. Stephenson's Report, in determining B-K-Cypress' "before" incremental profit margin, Dr. Stephenson used a weighted average of incremental profit margins from 1994 - July 2000.  *See* Doc. 203-1 at 13 (Report Exhibits 5, 6).

*Bridge Corp. v. American Somax Ventures*, 18 so.3d 648 (Fla. 4th DCA 2009) (lost profits must be established with reasonable degree of certainty; finding expert testimony lacked reasonable certainty because expert could not establish similarity of comparison companies, noting that comparison companies "might have provided the trappings of a yardstick, it was not enough to simply assume those contractors were comparable and made a profit; it was necessary to prove both.").

In this case, Dr. Stephenson relied on the survey data that were provided to him in performing his analysis. It is not necessary for Dr. Stephenson to have performed the survey himself for purposes of considering whether his testimony is admissible under *Daubert*. However, the reliability of the underlying data is open to question with respect to whether the surveyed companies are sufficiently comparable to B-K Cypress to provide an objective measure of damages. Therefore, while the Court will deny Auto-Owners' motion to exclude Dr. Stephenson's testimony regarding this part of his analysis, the Court will do so without prejudice to Auto-Owners' right to move to exclude the testimony at trial if Plaintiff is unable to establish the reliability of the survey data through other evidence.

### B. **Plaintiff's Motion to Exclude Testimony of Professor Harrison**

Plaintiff contends that Professor Harrison's testimony should be excluded because it is not helpful, relevant, or reliable, and is likely to cause confusion of the issues and undue prejudice. Doc. 199.

Professor Harrison holds a Ph.D in Economics and Business Administration, and a J.D. degree. He is a professor at the University of Florida, teaching in the areas of Antitrust, Law and Economics, Economic Regulation, and Contract Law. He has written

articles and books in the areas of contracts, law and economics, and antitrust, and has testified as an economic expert in federal and state courts.

B-K Cypress does not challenge the qualifications of Professor Harrison as an expert. Therefore, the Court will not discuss the first prong *of Daubert* and concludes, for purposes of the *Daubert* analysis, that Professor Harrison is qualified to testify competently regarding the matters identified in his Report. The Court will turn to consideration of the remaining *Daubert* factors.

Professor Harrison observes that "[t]ypically, when an expert is retained on a matter of damages, he or she calculates the damages. In this instance I have declined to do so because the record has not developed to the point that any acceptable damage methodology can be employed to determine even a rough measure of damages. In fact, in my opinion Dr. Stephenson's report lacks economic merit and is inconsistent with any acceptable damage methodology." Doc. 166-1.

In terms of *Daubert*, Professor Harrison does not use any methodology but rather focuses on asserted deficiencies in Dr. Stephenson's application of the "before and after," and "yardstick" models. Inasmuch as Auto-Owners' *Daubert* motion was derived from the flaws identified in Professor Harrison's report, the Court has addressed such arguments in the foregoing discussion of Auto-Owners' motion.

The Court concludes that as a pure rebuttal opinion that does not offer any alternative methodology or analysis, Professor Harrison's testimony would not aid the jury in determining the amount of damages, if any, to award to B-K Cypress. The criticisms raised in Professor Harrison's report may be explored through cross-examination of Dr. Stephenson and B-K's other witnesses. Under the circumstances of

this case, it is unnecessary and unduly prejudicial to present evidence that is directed to the weight and credibility of Dr. Stephenson's testimony by way of a rebuttal expert. Professor Harrison's testimony will be excluded.

 Accordingly, it is **ORDERED:**

 1.  Auto-Owner's *Daubert* Motion to Exclude Evidence (Doc. 211) is **DENIED** without prejudice to its right to move to exclude Dr. Stephenson's testimony at trial as detailed herein.

 2.  B-K Cypress' Motion to Strike Affidavits, Doc. 215, is **GRANTED IN PART** and the affidavit of Frederick A. Raffa is **STRICKEN**.

 3.  B-K Cypress' *Daubert* Motion to Exclude Testimony, Doc. 199, is **GRANTED.**

 **DONE AND ORDERED** this 25th day of May 2012.

       *s/Gary R. Jones*
       GARY R. JONES
       United States Magistrate Judge